## GEORGE F. MALCOLM *vs.* CITY OF BOSTON.

Suffolk. November 18, 1898. — May 18, 1899.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Board of Police of Boston — Rules and Regulations — Police Officer — Recovery for back Pay.*

The board of police for the city of Boston has the right to establish rules and regulations for the government and discipline of the force, and to provide therein for fines and forfeitures in cases of absence from duty; and under the rules and regulations so established, a police officer who was appointed in December, 1873, and continued in office till January 5, 1893, when he was retired on his own petition with a pension, cannot recover for back pay for various periods previous to said January 5, he never having performed any duty or reported for or offered to perform duty during those periods.

CONTRACT, by a retired police officer of the city of Boston, for pay alleged to be due him. The plaintiff having deceased, the case was prosecuted by his administratrix. Trial in the Superior Court, without a jury, before *Bond*, J., who reported the case for the consideration of this court, in substance as follows.

Malcolm was duly appointed a police officer of the city of Boston on December 24, 1873, and held that office continuously till St. 1878, c. 244, took effect. He continued to be a police officer of the city of Boston under that act until St. 1885, c. 323, entitled "An Act to establish a board of police for the city of Boston," took effect. He continued to be a police officer of the city of Boston under the provisions of the latter act until January 5, 1893, when he was retired from service and pensioned upon his own petition, dated August 13, 1890, under the provisions of St. 1892, c. 353.

On October 18, 1893, Malcolm brought this action against the city of Boston for back pay alleged to be due him for various periods, beginning with April 15, 1887, and ending with January 5, 1893.

Section 5 of St. 1885, c. 323, provides as follows: "nor shall the pay of the police be increased or diminished except by the concurrent action of said city (i. e. Boston) and said board of police." In 1887 an ordinance was passed by the city of Boston

stating the pay of patrolmen who had served more than two years to be twelve hundred dollars per annum. This ordinance was concurred in by the board of police.

Prior to the passage of St. 1878, c. 244, the police force of the city of Boston was under the control of the board of aldermen. Between the passage of St. 1878, c. 244, and St. 1885, c. 323, the police force was under the control of the board of police commissioners, and since the passage of the latter statute the police force has been under the control of the board of police for the city of Boston. While the police force was under the control of the board of aldermen, that board passed rules and regulations governing the said police force, from which the following is an extract :

" General Rules. . . . 7. Policemen wounded or otherwise disabled while in the performance of their official duty, and those rendered ill in consequence of unusual or extraordinary hardship or exposure beyond the regular line of their duty, shall receive pay for their period of service necessarily lost in recovering, when duly certified by the city physician, or other physician appointed by their respective captains for them, upon approval of the committee on police. In cases of ordinary sickness pay may be allowed for such length of time as the committee on police may determine.

" 8. Punctual attendance, prompt obedience to orders, and conformity to the rules of the department shall be rigidly observed."

This rule was in force at the time Malcolm was first appointed to the police force, and when Malcolm signed the agreement hereinafter referred to.

The board of police commissioners, while in control of the police force, passed the rules and regulations governing the police force from which the following is an extract :

" Rule 212. When members of the force lose time on account of sickness or injury caused by unusual exposure or exertion while in the discharge of police duty, and such sickness or injury is certified to by the city physician, or some other reputable physician approved by the police commissioners, full pay for lost time will be allowed.

" When members of the force lose time on account of sickness

or injury arising from or during the ordinary discharge of police duty, and such sickness or injury is duly certified to by the city physician, or some other reputable physician approved by the police commissioners, half pay for lost time will be allowed for such length of time as the police commissioners may in each case determine.

" Officers absent on leave to attend funerals of near relatives will not be allowed pay, except upon the approval of the police commissioners.

" No pay for lost time will be allowed when the sickness or disability is feigned or simulated; or when it arises from carelessness, improper or vicious conduct, excessive indulgence of appetite, or other bad habits; or from improper, illegal, or immoral practices; or from any cause occurring while absent from duty; or if the sick member shall, fraudulently, by concealment, false statement, or otherwise, seek to deceive or mislead the attending physician in relation to his case; or if the member shall not remain at his residence, so as to be visited at the option of the city physician; or if he refuses or neglects to conform to the instructions of the attending physician."

This rule was passed soon after Malcolm signed the agreement hereinafter referred to, and was in force until the rules and regulations of the board of police for the city of Boston were passed.

The board of police for the city of Boston, while in control of the police force, passed rules and regulations for the government of the police force, from which the following is an extract:

" Rule 25. Of Pay. 1. The salary and pay of the police shall be paid to each person entitled thereto, in accordance with prescribed rules and regulations, subject, however, to such deductions for lost or sick time as shall be made to satisfy fines imposed on any member by way of discipline or punishment.

" 2. Full pay will be allowed the police during the regular annual vacation, excepting so far as such pay or any part thereof may have been forfeited for any cause laid down in the rules established for the government of the force. In no other case when members are absent on leave shall any pay be allowed them, except as provided in these rules.

" 3. When police officers are absent from duty on account of

sickness or injury, caused by unusual exposure or exertion while on duty, and such sickness or injury is certified to by the city physician, or some other reputable physician, approved by the board of police, full pay for lost time will be allowed.

" When police officers are absent from duty on account of sickness or injury arising from the ordinary discharge of police duty, and such sickness or injury is certified to by the city physician, or some other reputable physician, approved by the board of police, half pay for lost time will be allowed for not exceeding thirty days.

" 4. Pay will not be allowed during absence from duty to attend funerals unless the relationship between the decedent and the applicant is that of father, mother, wife, wife's father or mother, child, brother, sister, or wife's brother or sister.

" 5. No pay for lost time will be allowed during absence from duty for any purpose whatever, excepting during the annual vacation, on account of sickness, to attend funerals, or to veteran soldiers to attend services on memorial day.  No pay for lost time will be allowed for less than three days' sickness or disability, unless such sickness or disability is incurred in line of duty ; or when the sickness or disability is feigned or simulated ; or when it arises from carelessness, improper or vicious conduct, excessive indulgence of appetite, or other bad habits ; or from improper, illegal, or immoral practices ; or from any cause occurring when not on duty, or if the sick person shall fraudulently, by concealment, false statement, or otherwise, seek to deceive or mislead the attending physician in relation to his case ; or if the member shall not remain at his residence, so as to be visited at the option of the city physician ; or if he refuses or.neglects to conform to the instructions of the attending physician.

" 6. Police officers shall not sell or assign their pay, or give powers of attorney for the collection thereof, except by permission of the board of police.

" 7. The time rolls shall be made up and forwarded to the chief clerk as follows :

" For officers stationed at headquarters, the city hall, and city prison, monthly, by the superintendent. . . .

" For the officers and employees in the several divisions, weekly, by the commanding officers of such divisions.

"Weekly time rolls shall be forwarded on Tuesday of each week, and will be made up to include the following Thursday; monthly time rolls shall be forwarded on the twenty-fifth of each month, and will be made up to include the last day of the month.

"Time rolls shall be accompanied by a statement of the amount due each person for extra work, of the number of days each has been absent, from sickness or other cause, physicians' certificates, petitions for full pay, and the amount collected for extra services. Every petition for full pay must be accompanied by a statement of the facts in the case."

This rule was in force during the periods for which pay is sought to be recovered in this action.

Malcolm knew of the existence of the above rules during his whole service as a police officer, and until he brought this suit.

In the years following the passage of St. 1878, c. 244, there was a general reorganization of the police force, and the following agreement was signed by all the members thereof, including Malcolm :

"December 15, 1880. Members of the Department : We, the undersigned, having been heretofore appointed members of the police department of the city of Boston, in consideration of being retained as such members and other valuable considerations, receipt whereof is hereby acknowledged, do hereby agree each for himself to obey and be bound by all such rules and regulations as are or may be from time to time to me laid down for the government of said police department by the board of police commissioners of said city, or by any other lawful authority."

Prior to July 19, 1890, the said George F. Malcolm had been absent from duty for various short periods. From July 19, 1890, to January 5, 1893, the said George F. Malcolm was absent from duty altogether. The said George F. Malcolm never reported for duty or offered to perform police duty during the periods in question, and no evidence was introduced on either side tending to show that he had ever received any pay for the periods in question.

Malcolm petitioned in 1890 to be retired and pensioned, but never made any demand upon the city of Boston, or any officer thereof, or upon the board of police, for any back pay until February 3, 1893, about one month after he was retired and pen-

sioned, when he wrote a letter to the chairman of the board of police, which letter was mailed in an envelope addressed " City of Boston, Police Department," demanding back pay ; but there was no other evidence that the city of Boston ever had any notice of his claim for back pay till this suit was brought. No requisition was ever made by the board of police upon the city of Boston, or upon any officer thereof, in relation to the pay of the said Malcolm.

The defendant asked the judge to rule that, upon all the evidence in the case, the plaintiff was not entitled to recover. The judge refused so to do, and the defendant submitted certain requests for rulings, upon which the judge made no finding of fact or ruling of law, but made the following rulings of law and findings of fact :

" I found that George F. Malcolm was a police officer from the twenty-fourth day of September, 1873, to the fifth day of January, A. D. 1893 ; that said Malcolm duly signed the agreement of December 15, 1880, without money consideration ; that the rules of the board of police were in force during the period for which pay is sought to be recovered ; that the rules of the board of aldermen were in force when the said Malcolm was first appointed to the police department, and when the said Malcolm signed the agreement of December 15, 1880 ; that the rules of the board of police commissioners were passed soon after Malcolm signed said agreement, and were in force until the rules of the board of police were passed ; that Malcolm knew of the existence of such rules during his whole service as a police officer, and until he brought this suit ; that this suit was not brought and no demand was made for any such back pay by said Malcolm until February 3, 1893, after the periods for which Malcolm, or his estate, now seeks to recover pay, and until after Malcolm had been retired from said department, and had been pensioned.

" I ruled that though the agreement of December 15, 1880, was not binding as a contract, Malcolm waived all right to his salary for the time he was unable to perform police duty by reason of sickness by signing such agreement, and by acquiescing in the withholding of his pay under the rules and regulations of the board of police, and by not making any demand or claim

for his pay during the time he was sick, and not until after he had obtained an order from the board for his retirement. And thereupon, I ruled that the action could not be maintained, and found for the defendant. I now report the case for the consideration of the Supreme Court.

"If the above ruling that the plaintiff could not maintain the action was right, or if, for any other reason, the finding for the defendant should stand, then judgment is to be entered on the finding. Otherwise, such order is to be made as the Supreme Court may see fit."

*G. Cunningham*, for the plaintiff.

*J. T. Wheelwright & F. R. Bangs*, for the defendant.

MORTON, J.   George F. Malcolm was appointed a police officer of the city of Boston in December, 1873, and continued in that office till the 5th day of January, 1893, when he was retired on his own petition with a pension. The action as brought was for back pay for various periods beginning with April, 1887, and ending with January 5, 1893, but at the trial all claim for back pay before July, 1890, was abandoned. Malcolm never performed any duty or reported for or offered to perform duty during the periods in question.

The administratrix contends that Malcolm was entitled to his salary while he held the office of policeman, whether he performed or offered to perform duty or not during the periods in question; in other words, that the salary was an incident of and belonged to the office. The defendant contends that the board of police had the right to establish rules and regulations for the government and discipline of the force, and to provide therein for fines and forfeitures in cases of absence from duty, that they did establish such rules, and that under them the plaintiff is not entitled to recover. These contentions present the principal question in the case.

The justice who heard the case found that the conduct of Malcolm had been such that he had waived all right to his salary during the times when he was absent from duty. If the defendant's contention is correct, it disposes of the case, we think, on a somewhat broader and more satisfactory ground than that on which it was disposed of by the justice who heard it, and we therefore proceed to consider in the first instance the defendant's contention.

Under the revised charter of the city of Boston, St. 1854, c. 448, § 33, " The administration of police, together with the executive powers of the said corporation generally, and all the powers formerly vested in the selectmen of the town of Boston," were vested in the board of aldermen " as fully and amply as if the same were herein specially enumerated." It seems to us that under the authority thus conferred the board of aldermen had the power to adopt such reasonable rules and regulations as they deemed necessary for the government and discipline of the police, and to provide for cases of meritorious service, or by suitable fines and forfeitures for cases of absence from or neglect of duty. And accordingly they adopted a rule that " Policemen wounded or otherwise disabled while in the performance of their official duty, and those rendered ill in consequence of unusual or extraordinary hardship or exposure beyond the regular line of their duty, shall receive pay for their period of service necessarily lost in recovering, when duly certified," etc. " In cases of ordinary sickness pay may be allowed for such length of time as the committee on police may determine." By St. 1878, c. 244, the board of aldermen was superseded, so far as the administration of the police was concerned, by a board of police commissioners appointed by the mayor subject to the approval of the city council. By § 2 of that act it was provided that " all the powers vested by the statutes of the Commonwealth in the board of aldermen of the city of Boston in relation to the administration of police, and the appointment of watchmen and policemen in said city, . . . shall be and hereby are vested in the said board of police commissioners." By § 4 it was provided that " The government and discipline of the police department shall be such as the said board of police commissioners may from time to time by rules and regulations prescribe," and by § 10 it was enacted that the members of the police force in office when the commissioners were first appointed should hold their offices till removed or placed on the retired list by the commissioners; " and the present rules and regulations of the board of aldermen for the government of the police shall continue in force until otherwise ordered by the said commissioners." It is plain, we think, from these various provisions, that the board of police commissioners, as the successors of the board of aldermen in the

administration of the police force, had a like power to adopt such reasonable rules and regulations as they should deem proper in regard to matters affecting the value and efficiency of the force. By St. 1885, c. 323, the board of police commissioners was superseded in its turn by a board of police, which has continued ever since, and which is appointed by the Governor with the advice and consent of the Council. By § 2 of that act this board was given " authority to appoint and establish and organize the police of said city of Boston, and make all needful rules and regulations for its efficiency," and it was further provided in that section that " all the powers now vested in the board of police commissioners in . said city of Boston by the statutes of the Commonwealth or by the ordinances, by-laws, rules, and regulations of said city, except as otherwise hereby provided, are hereby conferred upon and vested in said board of police." By § 3 it was provided that the members of the police force in office when the board was first appointed should continue to hold their offices until removed or placed on the retired list by said board, and that " the present rules and regulations of the board of aldermen for the government of the police shall continue in force until otherwise ordered by said board of police." There are other provisions to the effect that the police are to be paid by the city of Boston upon the requisition of the board, that no larger number of patrolmen is to be appointed except with the consent of the city " than the present police commissioners of said city are now authorized to appoint," and that the pay of the police shall not " be increased or diminished except by the concurrent action of said city and said board of police." § 5. We discover nothing in this act which manifests an intention to cut down the powers of the board of police in respect to the government and discipline of the police, as compared with those exercised by the board of police commissioners and by the board of aldermen. On the contrary, it is expressly provided that it shall have authority to make all needful rules and regulations for its efficiency, and that all powers vested in the board of police commissioners, " except as otherwise hereby provided, are hereby conferred upon and vested in said board of police." The exception does not, we think, affect the question. It is manifest that the power to make rules and regulations in regard to meritorious service, or to

establish fines and forfeitures in cases of absence from or neglect of duty, would constitute a powerful means of maintaining the discipline and efficiency of the force.    We cannot believe that it was the intention of the Legislature to deprive the board of police of such an instrumentality, and we find nothing in the act which requires or warrants such a result.    The provision in regard to increasing or diminishing the pay manifestly refers to the salary which has been or may be established, and not to such reductions as may occur through fines or forfeitures established to preserve and promote the discipline and efficiency of the force.    The plaintiff relies upon cases in New York and other States, especially those in New York, and upon the nature of the office held by a member of the police force.    But as we view the matter, it relates to the construction of the statutes vesting the administration of the police in the board of aldermen and in the boards which succeeded it, rather than to the nature of the office of a policeman and its incidents.    It is manifest that in construing our own statutes upon such a matter as this, cases elsewhere can be of little if any assistance.    But it is to be observed that it appears in New York to be expressly provided by statute " that policemen absent from duty through disease or injuries contracted in public service shall receive full pay."  *People* v. *French,* 91 N. Y. 265, 278.

The administratrix in effect concedes, as we understand her, that, if the rules and regulations established by the board of police in regard to the pay which members of the force are entitled to when absent from duty are valid, then she is not entitled to recover.  For reasons which we have indicated, we think that the rules are valid.  The result to which we have come on this branch of the case renders it unnecessary to consider the question of waiver.  In accordance with the terms of the report, the entry will be judgment on the finding.

*So ordered.*