## WILLIAM J. RYAN *vs.* CITY OF MARLBOROUGH.

Middlesex.    October 3, 1945. — October 31, 1945.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & WILKINS, JJ.

*Municipal Corporations,* By-laws and ordinances. *Police. Marlborough.*

Successive ordinances, some of which amended the provisions of § 1 of c. 36 of the ordinances of the city of Marlborough, some of which provided that "all ordinances inconsistent with this ordinance are hereby repealed," and all of which related solely to the amount of annual compensation to be received by police officers, were not inconsistent with and did not effect a repeal of § 2 of said c. 36 giving the mayor authority to determine the conditions under which certain leaves of absence with or without deduction from pay should be granted to police officers; and an order by the mayor under § 2 in 1943 was valid.

CONTRACT. Writ in the Superior Court dated November 6, 1943.

The case was heard by *Brogna,* J., without a jury.

In this court the case was submitted on briefs.

*E. T. Simoneau,* for the plaintiff.

*G. E. Dewey & F. W. Fisher,* for the defendant.

DOLAN, J. This action of contract by a member of the police force of the defendant city is brought to recover $291.50, representing pay for fifty-three days during which the plaintiff was absent from duty in the year 1943. The case was heard by the judge sitting without a jury. He found for the defendant, and the case comes before us on the plaintiff's exceptions to the denial of certain of his requests for rulings.

Material facts are these: The defendant was incorporated as a city under the provisions of St. 1890, c. 320. In 1895 the city council adopted an ordinance (c. 36) relative to the

salaries and services of the city marshal and police officers, which provided in § 1 for annual compensation of regular police officers ranging, according to period of service, from $730 to $912.50. Section 2 of the ordinance provides as follows: "The city marshal, sergeant of police and regular police officers shall each be entitled to an absence from duty of fourteen days during each year of their service, at such times as the mayor shall designate, with full pay; the mayor may grant additional leave of absence to said officers with or without deduction from their yearly compensation, as he shall determine." Section 1 of said c. 36 was amended by c. 51 of the ordinances adopted on May 1, 1913, and entitled an "Amendment to Section 1, Chapter 36, of City Ordinances, an ordinance relative to salaries of police officers . . ." by striking out § 1 and inserting a new section affecting only the amount of annual compensation. In June, 1917, an ordinance similarly entitled, relative to salaries of police officers and affecting only the amount of compensation, was adopted (c. 56). In May, 1918, an ordinance (c. 59), similarly entitled, was adopted relative to the annual salaries or compensation of police officers (but not by way of amendment to the preëxisting ordinance), providing in § 1 for increases of annual compensation. Section 2 of this ordinance provided that c. 56 and "all ordinances inconsistent with this ordinance are hereby repealed." A new ordinance as to the same subject matter was adopted by c. 61 in May, 1919, with like provisions for repeal. In April, 1920, a new ordinance (c. 63) was adopted making a change in the salaries of police officers, and repealing c. 61 and all ordinances inconsistent with this ordinance. An ordinance establishing the salaries of police officers was adopted in April, 1925 (c. 75). This ordinance amended c. 63 by fixing the annual compensation of patrolmen who had served six months in regular service at $2,007.50 "per year." It is pertinent to observe at this point that in none of the ordinances adopted subsequently to c. 36 of 1895 is there any express repeal of § 2 of that ordinance, the terms of which have already been recited. Purporting to act thereunder, on June 18, 1943, the mayor promulgated the following

order: "The members of the police department shall be entitled to fourteen days sick leave each year. The first two days of sick leave will not count but if the officer is out over two days and he presents a doctor's certificate to the chief, who in turn will give it to the city auditor, the officer will be allowed the full period out because of sickness, including the first two days, but no more than fourteen days in any one year. The sick leave is not to accumulate for use in any other year if not used."

It was agreed at the hearing in the court below that the plaintiff was appointed a police officer of the defendant city on November 25, 1937; that he has been a police officer for more than six months and is entitled to the maximum salary fixed by c. 75 of the city ordinances; that he had fourteen days' vacation in 1943 for which he was paid; that he also received the sick leave of fourteen days with pay in that year; that the $291.50 sought to be recovered by him represents the pay for fifty-three days over and above the vacation and sick leave periods above referred to, during which fifty-three days he did not work or offer to work. It was further agreed that if § 2 of c. 36 of the city ordinances adopted in 1895 is valid and the order promulgated by the mayor is valid, the finding should be for the defendant.

The judge denied certain rulings requested by the plaintiff to the effect that § 2 of c. 36 is inconsistent with c. 59 (1918) of the ordinances relative to the annual salaries of police officers of the city; that the mayor was without authority to promulgate the order of June 18, 1943; that the plaintiff is entitled to receive the annual salary of $2,007.50 without deduction therefrom; and that the evidence warrants a finding for the plaintiff.

The plaintiff properly does not question the validity of c. 36 of the ordinances at the time of its adoption in 1895. See St. 1890, c. 320, § 10; *Malcolm* v. *Boston*, 173 Mass. 312. The authority to establish a police force would be futile if it did not carry with it, at least by implication, the authority to enact reasonable rules for the effective administration of the force and to compel obedience to them by reasonable means. See 3 Op. Atty. Gen. 165, 167. The

plaintiff's sole contention is that § 2 of c. 36 of the ordinances of 1895 is inconsistent with the provisions of c. 59 (1918) which the plaintiff argues establishes a "fixed annual or periodical payment for services, depending upon the time and not upon the amount of services rendered" (see *Benedict* v. *United States*, 176 U. S. 357, 360; *Hooker* v. *McLennan*, 236 Mass. 117, 119), while § 2 of c. 36 (1895) makes the test the "amount of services rendered" and therefore must be taken to have been repealed by § 2 of c. 59.

We do not sustain the foregoing contention of the plaintiff. It is a common practice for the Legislature, in enacting a statute, to insert a clause that all laws and parts of laws in conflict with the statute, or all acts or parts of acts inconsistent therewith, are repealed. Such a provision operates as an express limitation upon the extent to which former acts shall cease to be operative, namely, only so far as they are actually inconsistent with the new act. The "principle of interpretation is well established, that statutes alleged to be inconsistent with each other, in whole or in part, must be so construed as to give reasonable effect to both, unless there be some positive repugnancy between them." *Brooks* v. *Fitchburg & Leominster Street Railway*, 200 Mass. 8, 17. See *Commonwealth* v. *Bloomberg*, 302 Mass. 349, 352. See also *Commonwealth* v. *Slocum*, 230 Mass. 180, 191. We are of opinion that there is no inconsistency between the provisions of § 2 of c. 36 of the city ordinances and the provisions of any subsequent amendments to § 1 of c. 36 or of the new ordinances with respect to the annual compensation of police officers, all of which amendments or new ordinances dealt solely with the fixing of the annual compensation of the police officers and were so entitled. See *Commonwealth* v. *O'Neil*, 233 Mass. 535, 541; *Wheelwright* v. *Tax Commissioner*, 235 Mass. 584, 586; *Commissioner of Corporations & Taxation* v. *Chilton Club*, *ante*, 285, 292, and cases cited. In each instance the only purpose was to provide for an increase in the annual compensation. The proper interpretation of the provision for repeal of ordinances inconsistent with later ones is that all the provisions of the former ordinances establishing the

annual compensation at any other rate were repealed, and not that the provisions of c. 36, § 2, designed to control the domestic management and supervision of the members of the police force in the interest of discipline were intended to be repealed.

We cannot concur in the argument of the plaintiff that the mere fixing of his annual salary establishes his right to receive it in full without respect to whether he performs his duties or not. Such a provision as that contained in c. 36, § 2, constitutes a means of maintaining the discipline and efficiency of the police force, a proper and necessary means to that end and one in nowise inconsistent with the provisions of the governing ordinance respecting the annual compensation of the members of the force. See *Malcolm* v. *Boston*, 173 Mass. 312. As was said in *Malcolm* v. *Boston*, 173 Mass. 312, 320–321, "It is manifest that the power to make rules and regulations in regard to meritorious service, or to establish fines and forfeitures in cases of absence from or neglect of duty, would constitute a powerful means of maintaining the discipline and efficiency of the force. . . . The provision in regard to increasing or diminishing the pay manifestly refers to the salary which has been or may be established, and not to such reductions as may occur through fines or forfeitures established to preserve and promote the discipline and efficiency of the force." See 3 Op. Atty. Gen. 165, 167, et seq.; *Dunn* v. *Commissioner of Civil Service*, 279 Mass. 504, 509.

There was no error in the denial of the plaintiff's requests for rulings. The evidence did not warrant a finding for the plaintiff.

*Exceptions overruled.*