18 N.J. Super. 5 (1952)
86 A.2d 597
BOROUGH OF JAMESBURG, A MUNICIPAL CORPORATION, PLAINTIFF-APPELLANT,
v.
HARRY L. HUBBS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 4, 1952.
Decided February 20, 1952.
*7 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. John T. Keefe argued the cause for appellant (Mr. Guido J. Brigiani, attorney).
Mr. Morris Spritzer argued the cause for respondent (Mr. David M. Kaplan, attorney; Mr. Spritzer and Mr. Joseph H. Edgar, on the brief).
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
The Borough of Jamesburg appeals from a judgment entered in the Middlesex County Court reversing the conviction and dismissal of Hubbs, a police officer, after a hearing upon written charges preferred by the chairman of the police committee. R.S. 40:47-10; and see Borough of Jamesburg v. Hubbs, 6 N.J. 578 (1951). The judgment directs Hubbs' reinstatement with back pay.
The borough has a population of 2300 and an area of one square mile. Hubbs has been for 18 years its only full time salaried police officer. He is assisted by a part-time salaried officer; special officers are also employed on an hourly basis as occasions for their services arise. Hubbs acts as supervisor of the other officers and since 1935 has had the title of chief of police. Hubbs and his family live in the borough hall. They service the building in lieu of paying rent. Requests by citizens, in person or by telephone, for municipal services or to make complaints are taken by Hubbs or one of his family. These concern not police matters alone but fire calls, ambulance calls, health matters and a variety of *8 other services. Many non-police matters are referred by Hubbs to other municipal employees for attention, but frequently are handled by Hubbs personally. In addition to his routine police work, Hubbs acts as clerk of the magistrate's court, drives the fire engine on occasion, posts contagious signs for the board of health, assists with or does the dog catcher's work, works with the county probation department and the welfare agencies and the hospitals, escorts funerals, and checks and arranges for repair of street lights. He and his wife also feed prisoners in the jail, receiving 50 cents a meal for the service. These various activities substantially occupy Hubbs' daytime hours.
In December, 1948, following a number of night robberies, a group of citizens petitioned the mayor and council "to furnish police protection between the hours of 12 midnight and 8 a.m." The chairman of the police committee took office on January 2, 1950. He and his committee made a study of methods which would provide "night protection without a great additional expenditure of money." After completing this study the committee recommended the scheduling of fixed night patrol assignments to officers by name. A resolution was passed by the governing body adopting the proposed schedule. Hubbs was assigned to patrol from midnight to 5 A.M., on four nights, and from 6 P.M. to 5 A.M., on two nights, of each week. The part-time salaried officer was assigned the hours from 6 P.M. to midnight on four nights and from 6 P.M. to 5 A.M. on one night. Named special officers were given week end assignments.
Hubbs never worked the night schedule. It was to have become effective on May 1, 1950, but on pleas of illness Hubbs obtained leaves of absence until May 23. On that night, following an examination by the borough physician and a report that he was physically fit for duty, Hubbs was ordered by the chairman of the police committee to report at midnight, per the schedule. Hubbs nevertheless failed to report, acting on his own doctor's advice that there was danger that the "butterflies in his stomach," which described *9 his ailment, would develop into a nervous breakdown. His doctor testified, "I felt at the time that he shouldn't go back to work at all, because he was so upset at that time." The "precipitating factor" bringing on his nervousness was the "changing of his hours."
The core of the difficulty was that Hubbs felt aggrieved by the night assignment. He considered that the Democratic majority of the council instigated the move as political reprisal upon him for entering his name as a Republican candidate for sheriff, and that the action accomplished his demotion, demeaning his stature in the community. We discern no substantial basis for his feeling of insult. There is no significant evidence that the action was taken to embarrass his aspirations for elective office or for any reason except to give the borough the night patrol service demanded by its citizens without adding a measurable financial burden upon the borough. And the assignment was not a demotion; the chairman of the police committee expressly instructed the other officers to continue their duties under Hubbs, as before.
Of course a police officer is not free to choose his working hours. He may not accept the benefits entirely discharged from the burden of his employment. Ryan v. City of Marlborough, 318 Mass. 610, 63 N.E.2d 902 (Sup. Jud. Ct. 1945). The 1932 borough ordinance establishing the Jamesburg Police Department expressly provides that officers shall "obey the rules and regulations of the Police Department as may be from time to time laid down by the Council." Hubbs is obliged to accept assignments as to working hours which make reasonable provision for off-duty periods. Indeed, he is not wholly free of the responsibilities implicit in his office even in off-duty periods. Ward v. Keenan, 3 N.J. 298, 310 (1949).
If Hubbs' illness indefinitely incapacitated him from doing night patrol duty the borough would not for that reason be obliged to make other arrangements for the doing of the work and to give Hubbs some other assignment. We *10 are not, however, called upon to consider what remedies might be availed of by the borough in such circumstances. The charges against Hubbs were not predicated upon incapacity but upon willful disobedience of orders. The County Court held in effect that if there was disobedience it was not willful as Hubbs was not without just cause for refusing to comply with the order to do night patrol duty. The three charges pressed below all stem from Hubbs' failure to report for work at midnight on May 23. They are: (1) that he violated R.S. 40:47-3 by absenting himself from duty "without just cause" for a period exceeding five days commencing midnight May 23, (2) that he "willfully" refused to report for duty since midnight May 23, and (3) that from midnight May 23 he "willfully" refused to obey and comply with the schedule of hours adopted by the governing body.
The trial court reversed the conviction upon charge (1) upon a factual finding that Hubbs' absence from and after midnight May 23 was not "without just cause." The court found that Hubbs had become actually ill over the situation, that, whether or not well founded, his feeling of insult was indeed real, and that the resulting illness was the true cause of the absence. We see no reason to disturb the trial court's finding. It has sufficient support in the testimony of Hubbs' doctor that the illness was real and not feigned.
There is no express finding of fact upon charge (2) but, in view of the finding of illness as the true cause of his failure to report, there was no error in the reversal of the conviction upon that charge as, plainly, the refusal to report was not willful.
Likewise there was no express factual finding upon charge (3). That charge was dismissed on motion on the ground that the schedule of hours was a "rule or regulation" (Borough of Jamesburg v. Hubbs, supra) within R.S. 40:47-1 which authorizes the governing body of every municipality "to prescribe and establish rules and regulations for the government and discipline" of the police department,  *11 but by "ordinance." The Supreme Court in Borough of Jamesburg v. Hubbs, supra, found it unnecessary to pass upon the question whether the schedule was a "rule and regulation" within the purview of R.S. 40:47-1 as "its validity based on its origin" was not questioned by either party in that proceeding.
We do not think the schedule is such a rule or regulation as is within the intendment of R.S. 40:47-1. That section has reference to rules and regulations of general tenor and application. The schedule is in substance nothing more than an order upon Hubbs and the other officers named therein to do patrol duty at the times respectively assigned therein. It does not purport in any sense to prescribe a shift schedule of indefinite duration regardless of identity of the officers to be assigned to it. We suppose its adoption by the formality of a resolution was motivated largely by a desire to evidence the support of the mayor and council for the program recommended by the police committee; Hubbs' resentment of the program sponsored by the chairman of the committee was well known before its adoption. The selection of particular officers to work at particular hours is reasonably within the implied powers of the chairman of the police committee as the administrative head of the police department, without special action of the governing body.
However, the error of the trial judge in dismissing the charge cannot avail to annul the judgment reversing the conviction based upon it. Even though valid as an order which Hubbs would disobey at the risk of subjecting himself to discipline under R.S. 40:47-6 (cf. Ward v. Keenan, supra), nevertheless, the charge that he "willfully" refused to comply with the schedule from midnight May 23 was not sustained in view of the trial court's finding that he was ill at that time and for that reason was not without just cause for refusing to work.
Moreover, the judgment must stand for another reason. No off-duty period was provided for Hubbs, and *12 apparently no definite one was contemplated. The chairman of the police committee testified that Hubbs was expected to continue to be responsible for the performance of daytime duties. Every police officer is entitled to enjoy an off-duty period daily, Ward v. Keenan, supra, p. 311; and the fixed night time assignment without provision for a daily off-duty period was unreasonable in the circumstances.
Affirmed.