JOSEPH JANSCO, PLAINTIFF-RESPONDENT, v. T. HOWARD WALDRON, DIRECTOR OF THE DEPARTMENT OF PUBLIC SAFETY OF THE CITY OF TRENTON, DEFENDANT-APPELLANT.

Argued April 5, 1976—Decided June 8, 1976.

See also, 70 *N. J.* 330.

*Mr. George T. Dougherty* argued the cause for defendant-appellant (*Mr. Dennis J. Quinn,* on the petition).

*Mr. Francis X. Hayes* argued the cause for *amicus curiae* The New Jersey State League of Municipalities and New Jersey Institute of Municipal Attorneys.

*Mr. William F. Curtin* argued the cause for plaintiff-respondent.

The opinion of the Court was delivered by

SULLIVAN, J. This appeal concerns the validity of Disciplinary Rules and Regulations of the Police Division, Department of Public Safety, City of Trenton, New Jersey. A Trenton police officer, charged with misconduct in violation of certain of these rules, challenged their validity on the ground that they had not been adopted in accordance with statutory requirements. The trial court upheld the rules. However, the Appellate Division reversed and ordered a dismissal of these charges, holding that the rules had no legal standing and plaintiff could not be held to answer to an alleged violation of them. This Court granted certification. 68 *N. J.* 279 (1975). For reasons hereinafter set forth we conclude that the Rules and Regulations were lawfully adopted and we reverse the judgment of the Appellate Division.

Plaintiff's alleged misconduct occurred in August, 1973. The factual background of the case was summarized by the trial court as follows:

* * * The members of the Local Patrolmen's Benevolent Association were dissatisfied with a decision made by officials of the Trenton Police Department as a result of which retaliatory action had been threatened. The charge against plaintiff is that in response to a request by a PBA official he contributed to the disruption of the normal operation of the police department by broadcasting a message over the police radio to all patrol cars and units directing them to immediately report to the first precinct police headquarters. This allegedly resulted in a great many of the police officers on duty immediately reporting to police headquarters, thereby leaving their normal areas of patrol unattended. Following the conduct of an investigation into this occurrence charges and specifications were prepared and served upon the official who directed the broadcast to be made as well as upon plaintiff for his participation therein.

Plaintiff was charged with conduct subversive of good order and discipline of the department, neglect of duty and willful disobedience of orders, violations of Rule 35, Section 1, Articles 5, 20 and 26 of the Police Division, Department of Public Safety, Rules and Regulations. He was also charged as an employee in the classified service under *N. J. A. C.* 4:1–16.1 *et seq.* with misconduct contributing to the disruption of the orderly operation of the Police Division, with negligence and incompetence in the performance of his public employment and with actions inconsistent with the standards of conduct becoming an employee in the public service.

Upon being served with a statement of charges and specifications and a notice of hearing, plaintiff filed the instant suit challenging, *inter alia,* the legality of the departmental rules and regulations on the ground that they had been adopted illegally and were void for that reason.

In order to understand the issue, a brief discussion of statutory background is helpful. The Police Department of the City of Trenton was created by ordinance pursuant to *N. J. S. A.* 40:47-1 which provided:

> The governing body of every municipality may make, amend, repeal and enforce ordinances to establish, maintain, regulate and control a police department and force, and subject to the provisions of article 3 of this chapter (§ 40:47–21 et seq.), a paid fire department and force therein; to prescribe and establish rules and regulations for the government and discipline thereof; the appointment, terms and removal of the officers and members thereof, and to prescribe their duties and fix their compensation.

This statute was repealed in 1971 and replaced by the following:

> The governing body of any municipality, by ordinance, may create and establish a police department and force and provide for the maintenance, regulation and control thereof, and except as otherwise provided by law, appoint such members, officers and personnel as shall be deemed necessary, determine their terms of office, fix their compensation and prescribe their powers, functions and duties and adopt and promulgate rules and regulations for the government of the department and force and for the discipline of its members. [*N. J. S. A.* 40A:14–118].

The two statutory sections are not significantly different. See *Smith v. Tp. of Hazlet,* 63 *N. J.* 523, 526 (1973). Accordingly, the discussion herein with regard to statutory interpretation shall be applicable to both statutory sections.

Section 2-9 of the Revised General Ordinances of the City of Trenton, after establishing a Division of Police and setting forth its structure, powers and duties, provides for the discipline of the Division in Section 2-9.8:

> The director of public safety shall prepare and, with the approval of the mayor, adopt rules and regulations for the control, disposition and discipline of the division of police, the division of fire and the bureau of communications. Such rules may pertain to training, efficiency, the use and care of equipment and apparatus, and all other appropriate matters pertaining to the divisions and their interrelationship. The director of public safety shall administer and enforce such rules, except that he may delegate the administration and enforcement to the division heads within their respective jurisdictions.

"Rules and Regulations of the Police Division, Department of Public Safety, City of Trenton, New Jersey" were pre-

pared and were adopted on December 8, 1949 by Resolution #9066 of the then Board of Commissioners of Trenton. It is these Rules which form the basis of the charges against plaintiff.[1]

Plaintiff's contention, sustained by the Appellate Division, is that the enabling statute mandates that departmental rules and regulations be adopted and promulgated only by the municipal governing body itself, and only by ordinance, and that the statute does not authorize the subdelegation of this rule-making power to any subordinate person or body. In this case, as heretofore noted, the governing body did adopt disciplinary rules and regulations, but not by ordinance.

In cases involving similar challenges to the validity of police rules and regulations the courts have made a distinction between regulations and procedures which involve the day-to-day management of a police department and those of a more general tenor and application. The latter have been considered to be within the ambit of *N. J. S. A.* 40 :47-1 and required to be enacted by ordinance. The former have been treated as being outside the scope of the statute and thus delegable to administrative officials. See *Bd. of Police Com'r. of Borough of Leonia v. Olson,* 101 *N. J. Super.* 565 (App. Div. 1968) ; *Jamesburg v. Hubbs,* 18 *N. J. Super.* 5 (App. Div. 1952) ; *In re Leonard Gioglio, Jr.,* 104 *N. J. Super.* 88 (Cty. Ct. 1968).

The Appellate Division, following the same approach, held that the rules in question did not fall within the day-to-day category since they did not prescribe or relate to the manner in which an individual policeman shall be required to perform his daily duties and did not specifically pertain to the daily operations of the department.

---

[1]During this litigation, the Trenton City Council, on February 21, 1974, by ordinance, amended Section 2–9.8 and specifically adopted the December 8, 1949 set of Rules and Regulations as the official Rules and Regulations of the Police Division.

■ We conclude that the Appellate Division erred in holding that, except for day-to-day administration or daily operation, rules and regulations for the discipline of a local police force must be adopted and promulgated by the governing body itself by ordinance, and this rule-making power may not be subdelegated to a subordinate person or body.

Preliminarily, we disapprove of the use of the day-to-day standard to judge the validity of particular disciplinary rules and regulations of a police department adopted pursuant to subdelegation. Such a broad standard is difficult of precise application in the context of disciplinary rules and regulations, and results in uncertainty and confusion. The real issue is whether the enabling statute permits subdelegation of the power to adopt disciplinary rules and regulations at all.

■ Whether or not local government itself is required to exercise the total power granted to it, or whether a proper and valid exercise of such power may be had by subdelegating particular details to a subordinate person or body, depends on the legislative expression viewed in light of the power granted.

■ *N. J. S. A.* 40A:14-118 empowers the governing body of a municipality, by ordinance, to create and establish a police department and force and provide for the maintenance, regulation and control thereof "* * * and adopt and promulgate rules and regulations for the government of the department and force and for the discipline of its members."

We interpret this latter provision to vest discretion in the governing body, by ordinance, either to exercise the rule-making power itself, or to subdelegate this power to a subordinate person or body having expertise in the matter. While a closely literal reading of the statute might confine the power to direct action by the governing body itself, considerations of practicality, discussed below, convince us that the true legislative intent is otherwise.

■ The City of Trenton, in its ordinance creating and establishing a division of police, has delegated to the Director

of Public Safety the authority to prepare and (with the approval of the mayor) adopt rules and regulations for the control, disposition and discipline of the division. Pursuant to this delegation, rules and regulations were promulgated. Moreover, although not required by the ordinance, the then governing body, by resolution of December 8, 1949 adopted the rules and regulations as prepared.

We find the foregoing procedure to have been consistent with the statutory authorization. The operation of a police department is a complex activity. The governing body of a municipality ordinarily cannot possibly attend to all of the details of administration of its various departments. In creating a police force, it must establish the departmental structure and fix basic operational policies including powers and duties. However, as a practical matter the task of formulating rules and regulations to implement these operational policies is often better left to subordinates. Chief Justice (then Judge) Weintraub in *Wagner v. Mayor etc., City of Newark*, 42 *N. J. Super.* 193 (Law Div. 1956), rev'd on other grounds 24 *N. J.* 467 (1957), expressed the principle as follows, at p. 213:

* * * But it is realism which forbids a blanket prohibition against delegation or redelegation of the legislative power. With the increasing complexity of governmental activity, the capacity of legislative bodies to perform the full legislative role diminishes and often disappears. This is manifestly true at federal and state levels, but equally true at the municipal level. Legislative bodies cannot possibly keep in touch with and be in effective and efficient control of the legislative details required in a practical approach to all problems. Frequently, the most the legislative body can do is to provide a basic plan of the solution, leaving to others the task of preparing and revising the detailed drawings. Unless such delegation is permitted, legislative solutions would bog down. *Davis, Administrative Law* (1951), sec. 27, *p.* 86. In short, necessity requires and therefore justifies delegation and dictates what portion of the power must be exercised by the delegating authority itself. The answer in every case must be found in the common sense of the matter.

In a situation where the governing body has subdelegated the rule-making power, it necessarily would retain its pri-

mary authority to modify or change such rules and regulations as may be promulgated. Beyond this, however the rules and regulations come into existence, they would have to satisfy the requirements of due process and reasonableness.

The legislative scheme discussed herein was reviewed in *Smith v. Tp. of Hazlet, supra,* where we stated that the New Jersey cases have insisted upon strict compliance with the statutory grant of power where the issue has concerned the regulation or control of a police department or police personnel. *Id.,* 63 *N. J.* at 528. *Harvey v. Poole,* 17 *N. J. Misc.* 165 (Ct. of Com. Pl. 1939) and *Keegan v. Bayonne,* 81 *N. J. L.* 120 (Sup. Ct. 1911) were cited as examples of this policy. However, the *Smith* case was concerned with the inherent power of the office of Chief of Police apart from the powers derived from the town governing body, and is not applicable to the case *sub judice.* To the extent that *Harvey v. Poole* and *Keegan v. Bayonne* are contrary to our present holding, they are hereby disapproved.

Plaintiff makes the further contentions that the Trenton ordinance does not provide for promulgation of the rules and regulations, is utterly lacking in standards expressed or implied to control the Public Safety Director's discretion and is illegal and void for these reasons.

The exercise of rule-making power is always subject to standards of due process and reasonableness. The ordinance in question delineates the matters which may be covered by the rules and regulations. Discipline, training, efficiency, use and care of equipment and apparatus are items specifically mentioned. Viewing the ordinance *in loto,* we conclude that adequate standards, express and implied, exist to control the Public Safety Director's discretion. Inherent in the ordinance, of course, is the requirement for promulgation of such rules and regulations as are adopted.

Aside from the foregoing, a finding of misconduct against a police officer need not be predicated upon the violation of any particular regulation or rule. *City of Asbury*

*Park v. Dept. of Civil Service,* 17 *N. J.* 419, 429-430 (1955). There we held that conduct of an officer which indicated an attitude of mind and approach to the obligations of his office fundamentally at variance with his sworn duty would be a violation of the required standard of behavior inherent in the office. See also *In re Emmons,* 63 *N. J. Super.* 136, 140 (App. Div. 1960). ·Certainly, the conduct attributed to plaintiff herein would fall within that category.

As to the "panoply of charges" presented by plaintiff concerning the alleged illegality and invalidity of the proposed hearing, we fully agree with the trial court that such charges are matters to be presented at the administrative proceeding where the facts can be developed and a record made. At this stage, a court should not be called upon to decide the legality of the particular charges and specifications or the procedural questions relating to the conduct of the disciplinary hearing. Plaintiff must first exhaust his administrative remedies. See *Roadway Express, Inc. v. Kingsley,* 37 *N. J.* 136, 140-142 (1962).

The judgment of the Appellate Division is reversed and the judgment of the trial court hereby reinstated.

*For reversal*—Chief Justice Hughes, Justices Mountain, Sullivan, Pashman, Clifford and Schreiber and Judge Conford — 7.

*For affirmance* — None.