ARTHUR YETMAN & others.[1] vs. CITY OF CAMBRIDGE
& others.[2]

Middlesex.    April 23, 1979. — June 1, 1979.

Present: KEVILLE, BROWN, & GREANEY, JJ.

*Municipal Corporations*, By-laws and ordinances. *Police. Laches.
Cambridge.*

A city ordinance providing vacations of varying lengths for police
    officers based on their length of service and defining service as
    commencing with the date of appointment as a reserve police offi-
    cer was not repealed or superseded by the city's acceptance of G. L.
    c. 41, §§ 111D and 111L, establishing length of police vacations
    based on years of service on the police force. [702]
A recodification of a city's ordinances expressly repealed all ordi-
    nances then in effect, including an ordinance providing vacations
    of varying lengths for police officers based on their length of service
    and defining length of service, even though the recodification omit-
    ted any reference to the definition of service. [702-704]
There was no merit to a contention that a recodification of a city's
    ordinances was invalid because the city failed to comply with the
    provisions of G. L. c. 43, § 23, and a similar provision of the ordi-
    nances with respect to publication of proposed ordinances. [704-707]
In an action by police officers seeking a declaration that, under a city
    ordinance, service time as an inactive reserve officer should be
    credited in the computation of a police officer's entitlement to vaca-
    tion, the plaintiffs' seven-year delay in pursuing their claims after
    the city abandoned computing vacation credit as set forth in the
    ordinance amounted to laches. [707-709]

CIVIL ACTION commenced in the Superior Court on July
26, 1974.

The case was heard by *Larkin*, J., a District Court judge
sitting under statutory authority.

*Sumner J. Chertok* for the plaintiffs.

[1] James McDevitt and Edward McNulty.

[2] Additional defendants are the city manager and police chief.

*Michael C. Gilman* for the defendants.

GREANEY, J. This appeal, arising out of a dispute be-tween the Cambridge police and the city, concerns the definition of length of service on the police force for pur-poses of computation of vacation benefits for permanent police officers. The plaintiffs, all permanent members of the regular Cambridge police force, brought an action for themselves and on behalf of other permanent members of the force against the defendants, seeking a declaration under G. L. c. 231A that service time as an inactive re-serve officer should be credited in the computation of a police officer's entitlement to vacation. Intrinsic to the dispute's resolution was the need to determine (a) wheth-er Cambridge ordinance no. 154,[3] enacted on May 17, 1948 (defining service for computation of vacation as com-mencing with the date of a policeman's appointment as a reserve officer) had been superseded or repealed by the city's acceptance of two pieces of permissive State legisla-tion concerning the topic of police vacations,[4] or by the city's general recodification of all of its ordinances enact-ed on May 8, 1972; and (b) whether the plaintiffs' seven year delay in pursuing their claims after the city aban-doned computing vacation credit in light of the definition of service in ordinance no. 154 amounted to laches. A judge heard the dispute on stipulated facts and agreed exhibits and declared the rights of the parties to the effect that (1) ordinance no. 154 was not superseded nor re-pealed by the city's acceptance of permissive legislation

---

[3] Ordinance no. 154 provided vacations of varying length for perma-nent Cambridge police officers based on their length of service and defined service as running from "the day of appointment as a Reserve Police Officer in the Police Dept."

[4] On October 24, 1949, Cambridge accepted St. 1949, c. 384 (now G. L. c. 41, § 111D), which provides a vacation of three weeks for officers with five years' service but less than ten years, and a vacation of four weeks for officers with ten years' service or more. On June 20, 1968, the city accepted St. 1968, c. 33 (now G. L. c. 41, § 111L), which provides a vacation of five weeks for police officers with twenty or more years of service.

regarding police vacations, but was effectively repealed by the city's recodification of its ordinances in 1972, (2) that the 1972 recodification was properly enacted, and (3) any claims the plaintiffs may have had between 1967 and 1972 as a result of the city's change in vacation policy were lost by laches on their part.

1. *Conflict between the statutes and the ordinance.* We agree with the judge that ordinance no. 154 was not repealed or superseded by the city's acceptance of G. L. c. 41, §§ 111D and 111L, establishing length of police vacations. Repeal of a municipal ordinance by supervening Statewide legislation of general content is disfavored unless there exists "some positive repugnancy" between the terms of the ordinance and the legislation. *Ryan* v. *Marlborough*, 318 Mass. 610, 613 (1945). See also *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 135-136 (1949). A local ordinance may permissibly regulate the same subject covered by the statute "[i]f the State legislative purpose can be achieved in the face of a local ordinance or by-law on the same subject . . . ." *Bloom* v. *Worcester*, 363 Mass. 136, 156 (1973). Sections 111D and 111L of G. L. c. 41 provide for length of vacations based on years of service on the police force but are otherwise silent on how that service is to be calculated. Ordinance no. 154 could permissibly coexist within the interstices of the statutes to provide a definition of "service" (commencing with the date of reserve appointment) for purposes of allocating vacation time, a subject not addressed expressly or by necessary implication in either § 111D or § 111L of c. 41. The two enactments were, as ruled by the judge, "fully capable of being read together in furtherance of a common purpose." See *Boston Police Patrolmen's Assn.* v. *Boston*, 367 Mass. 368, 372-373 (1975).

2. *Effect of the 1972 recodification.* The judge also correctly concluded that the general recodification of the Cambridge ordinances enacted by the city council on May 8, 1972, repealed ordinance no. 154. The 1972 compilation was intended as a complete overhaul and updating of all

of the city's ordinances. Not only the ordinance in contest, but also all other ordinances then in effect, were repealed by the clear and unequivocal language of § 1-5 of the 1972 code which expressly provided that "*all ordinances* of the City *heretofore in force* are hereby repealed" (emphasis supplied). Further support for the fact that ordinance no. 154 was repealed is found in § 15-5 of the revised code. That section provides fourteen days' annual vacation for police officers after six months of service. Significantly, it omits any reference to the definition of reserve service contained in ordinance no. 154. Taken as a whole, the 1972 ordinances deal with police vacations by allocating in § 15-5 two weeks of time off to officers with less than five years' service, and by leaving vacation benefits for officers with more than five years of service to the provisions of G. L. c. 41, §§ 111D and 111L.[5]

We see nothing in the city solicitor's letter to the city manager dated November 8, 1971, to aid the plaintiffs' position that the revised code was intended to maintain ordinance no. 154 in effect. In that letter, apparently admitted without objection, the solicitor informed the city manager with regard to the revised ordinances that "[n]o substantive changes have been made except the total fine has been increased to fifty dollars which is the legal maximum at present. Conflicting, redundant and repealed ordinances have been eliminated." The plaintiff argues that this language manifests an intent that no

---

[5] Section 1-5 of the revised general ordinances also provided that the repeal of all prior ordinances "shall not apply or affect any ordinance heretofore adopted accepting or adopting the provisions of any statute of the Commonwealth . . .," thereby maintaining G. L. c. 41, §§ 111D and 111L, in effect. The omission of the language contained in ordinance no. 154 also has to be viewed in light of the provisions of § 1-5 that "the provisions of this Code, in so far as they are substantially the same as ordinance provisions previously adopted by the City relating to the same subject matter, shall be construed as restatements and continuations thereof . . . ." The omission of any provisions in the revision similar to the text of ordinance no. 154 indicates a lack of intent to incorporate it into the revised code.

substantive changes were to be made in the existing ordi-
nances with the exception of altering fines, thus leaving
ordinance no. 154 in effect. But the fact that in 1967 the
city had abandoned use of the date of reserve appoint-
ment for purposes of computing vacation time, and the
fact that the council acted on the full text of the revised
ordinances (which expressly repealed "all" prior ordi-
nances, made no mention of the contents of ordinance no.
154, and provided a different scheme for vacations) suffi-
ciently dispel any value that this correspondence may
have for the conclusion that the provisions of ordinance
no. 154 were incorporated by implication into the revised
code. Moreover, the letter read in context indicates that
the revision was indeed designed to repeal all existing
ordinances.

Nor does the language in § 1-9 of the revised ordi-
nances, which provides that "[t]his Code shall not affect
... any right accrued ...," help the plaintiffs' position.
While it is true that the repeal of an ordinance cannot act
to deprive a person of vested economic rights or impair
contractual obligations (see 6 McQuillan, Municipal Cor-
porations §§ 21.15 and 21.45 [3d ed. 1969]), there is noth-
ing in ordinance no. 154 which expressly vests a contrac-
tual entitlement to a certain amount of vacation time, a
circumstance which the plaintiffs apparently recognized
by the negotiation of two collective bargaining agree-
ments which incorporated the city's computation of ser-
vice for vacation credit, and abandoned the plaintiffs'
reliance on the provisions of the repealed ordinance.[6]

3. *Procedural defects in the recodification.* The plain-
tiffs contend that the recodification was invalid because
the city failed to comply with the provisions of G. L. c. 43,
§ 23, and the second paragraph of § 3 of c. 1 of the Cam-

---

[6] The judge also found, based on stipulated facts, that continuously
from the summer of 1967, the city computed service time for vacations
for most permanent police officers on the basis of the officer's date of
assignment to active duty using reserve time only in some "unde-
fined" and "episodic" instances.

bridge ordinances of 1943. The first sentence of G. L. c. 43, § 23, as appearing in St. 1935, c. 68, § 1, which added the emphasized phrase, provides, "Every proposed ordinance or loan order, except emergency measures as hereinbefore defined *and revenue loan orders*, shall be published once in full in at least one newspaper of the city, and in any additional manner that may be provided by ordinance, at least ten days before its final passage." The remainder of § 23, which was unaffected by St. 1935, c. 68, § 1, includes an exemption from publication for any "codification of ordinances or proposed ordinances ... (which) exceed[s] in length eight octavo pages of ordinary book print." The exemption permits, in lieu of advertising, publication in a "printed pamphlet" at least ten days prior to final passage of the ordinances. The first paragraph of § 3 of c. 1 of the 1943 Cambridge ordinances replicates of G. L. c. 43, § 23, as in effect prior to St. 1935, c. 68, § 1. The second paragraph of that same section, however, replicates the first sentence of G. L. c. 43, § 23, as appearing in St. 1935, c. 68, § 1.[7] The full text of the

---

[7] The full text of c. 1, § 3, of the 1943 Cambridge general ordinances provides as follows: "Every proposed ordinance or loan order, except emergency measures as hereinbefore defined, shall be published once in full in at least one newspaper of the city, and in any additional manner that may be provided by ordinance, at least ten days before its final passage. After such final passage, it shall, in the same manner as before, again be published once, as amended and completed, except in the case of an emergency ordinance which may be passed as hereinbefore provided and which shall take effect on its passage, and shall be so published at the earliest practicable moment; provided, that if any ordinance or proposed ordinance, or codification of ordinances or proposed ordinances, shall exceed in length eight octavo pages of ordinary book print, then, in lieu of advertising required by this section, the same may be published by the city council in a municipal bulletin or printed pamphlet, and if so published in full at least ten days before its final passage, and thereafter, as amended and completed, again published in such bulletin or pamphlet, said publication shall be deemed sufficient without the newspaper publication as herein required.

"Every proposed ordinance or loan order, except emergency measures as hereinbefore defined and revenue loan orders, shall be published once in full in at least one newspaper of the city, and in any

1972 code of ordinances exceeded eight octavo pages of ordinary book print and the city, in reliance on the exemption from publication, contained in c. 43, § 23, and the first paragraph of § 3 of c. 1 of the 1943 ordinances, prepared a looseleaf photocopy of the new code and published three separate notices in the Cambridge Chronicle that the entire text of the ordinances would be available for examination in the city clerk's office.[8] We find, as did the judge below, that the second paragraph of § 3, c. 1, of the 1943 ordinances did not require publication of the entire text of the recodification and that a looseleaf photocopy of the code satisfied the requirement in the statutory exemption that a "printed pamphlet" be prepared. Any apparent inconsistency between the first and second paragraphs of § 3 of c. 1 of the 1943 ordinances is remedied by a construction which concludes that the second paragraph was added to the chapter as an inept, but effective, attempt to conform the chapter to G. L. c. 43,

---

additional manner that may be provided by ordinance, at least ten days before its final passage."

[8] The first notice was published on December 23, 1971, and provided as follows:

" (SEAL)
First Publication
No. 1727
CITY OF CAMBRIDGE
MASSACHUSETTS
THE GENERAL ORDINANCES OF THE CITY OF CAMBRIDGE
In the year one thousand nine hundred seventy-one.

AN ORDINANCE ENTITLED "The General Ordinances of the City of Cambridge" was passed to a second reading at a meeting of the City Council held on December 20, 1971 and after January 2, 1972 the question may be on passing to be ordained.

Attest: — Paul E. Healy, City Clerk.

NOTE: Pursuant to the provisions of General Laws, Chapter 43, Section 23, Tercentenary Edition, being a part of the City Charter, the Ordinances as aforesaid, which exceed in length eight octavo pages of ordinary book print may be examined at the Office of the City Clerk in the form of a printed pamphlet during office hours on or after December 22, 1971.

By order of the City Council,
    Paul E. Healy, City Clerk."

◦

§ 23, as appearing in St. 1935, c. 68, § 1.[9] Such a construction is reasonable and sensible, harmonizes both paragraphs of the ordinance with each other and with G. L. c. 43, § 23, and promotes the legislative purpose of avoiding newspaper publication of the entire text of documents of extraordinary length. Publication in a looseleaf binder of a photocopy of the ordinances sufficiently complied with the printed pamphlet requirements of both the statute and the ordinance.

4. *Laches.* The final issue concerns the plaintiffs' seven-year delay in commencing suit after knowledge of the city's change in computation of vacations. Some time during the summer of 1967 the city ceased using inactive reserve time in computing vacations and instead measured length of service for vacations solely on an officer's active reserve or permanent service time. The judge ruled that the city had met its burden of establishing the defense of laches to cut off its liability to the plaintiffs for any damages between 1967 and 1972, when ordinance no. 154 remained in force.

Laches is an equitable defense consisting of unreasonable delay in instituting an action which results in some injury or prejudice to the defendant. *Security Natl. Bank* v. *General Motors Corp.,* 345 Mass. 434, 441 (1963). *Pettinella* v. *Worcester,* 355 Mass. 412, 414-415 (1969). *Three Sons, Inc.* v. *Phoenix Ins. Co.,* 357 Mass. 271, 278 (1970). Its presence is ordinarily a determination of fact based on the particular circumstances of the case. *McGrath* v. *C.T. Sherer Co.,* 291 Mass. 35, 59-60 (1935). *Tzitzon Realty Co.* v. *Mustonen,* 352 Mass. 648, 650 (1967). There were findings that between 1971 and 1974 the city and the police union negotiated and signed two collective bargaining agreements.[10] Both agreements adopted "current policies

---

[9] We were not supplied with any legislative history with regard to the enactment of § 3 of c. 1 of the 1943 ordinances.

[10] The first agreement was executed on April 15, 1971, and terminated on December 31, 1972. The second agreement was executed on

and benefits relating to vacations ...," which had the effect of incorporating into the agreements the city's practice of using the date of an officer's permanent appointment in determining his vacation credit. The agreements also spelled out a grievance procedure for resolution of any dispute concerning the application or interpretation of any provision of the agreement and any disagreements with reference to "any law, ordinance, rule or regulation, policy or practice relating to the Police Department and its operations ...."[11] The judge found as well that both the city and the police settled on the vacation clause in the agreements with full knowledge of the costs and benefits implicit in the current vacation policy and that the city, in reliance on the negotiated results embodied in the agreements, committed itself to funding the contracts.

We agree that the delay in commencing suit was inordinate[12] and that, under the circumstances, the delay worked to the disadvantage of the city. The police failed, over the life of the first contract and during a portion of the time the second agreement was in force, to invoke the grievance apparatus either to test the city's interpretation of vacation benefits or to determine the applicability of the benefits purportedly granted by ordinance no. 154. There is merit in the defendant's argument that if the police had insisted on the pre-1967 vacation practices at the bargaining table, the city might have changed its position on other topics covered by the contracts, seeking in the give and take of negotiations some concessions from the union in exchange for lengthier vacations. Fur-

March 4, 1974, and was effective from January 1, 1973, through December 31, 1974.

[11] The grievance procedure established in both agreements consisted of a three-step process culminating in arbitration.

[12] This action was commenced on July 26, 1974, some four months after the execution of the second collective bargaining agreement, and seven years after the city changed its vacation policy.

thermore, based in part on the vacation policies as expressed in the executed agreements, the city appropriated amounts in its municipal budgets earmarked to implement the financial obligations required by the contracts. We conclude that the judge's findings as to laches are not clearly erroneous and are sound in law.[13] The circumstances are governed in substance by the rule that "it would not be in accordance with sound principles to permit the plaintiff to accept in silence a stipulated weekly wage week after week and then, without previous notice, seek to recover more." *Woods* v. *Woburn*, 220 Mass. 416, 420 (1915).[14]

*Judgment affirmed.*

---

[13] During the period of the first labor contract (April 15, 1971, to December 31, 1972) the police union could have insisted on determination of vacations in keeping with the terms of ordinance no. 154 under the provisions of G. L. c. 149, § 178I, as amended through St. 1970, c. 340, which provided in part that "[i]n the event that any part or provision of any such [collective bargaining] agreement is in conflict with any law, ordinance or by-law, such law, ordinance or by-law shall prevail so long as such conflict remains." By the effective date of the second agreement (January 1, 1973) ordinance no. 154 had been repealed, and the right to invoke the grievance procedure had been lost.

[14] The cases relied upon by the plaintiffs with regard to the laches issue are inapposite. In *Chief of Police of Westford* v. *Westford*, 365 Mass. 526 (1974), laches was not raised as a defense. In *Erickson* v. *Waltham*, 2 Mass. App. Ct. 436, 450-451 (1974), the city raised the defense of laches but failed to carry the day on it because of the absence of any findings in the record to show that the defense was made out in fact.