723 A.2d 1287

POLICEMEN'S BENEVOLENT ASSOCIATION, NORTH BRUNS-WICK, LOCAL 160, PLAINTIFF–APPELLANT, v. TOWNSHIP OF NORTH BRUNSWICK AND THOMAS MALTESE, DI-RECTOR OF POLICE, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 15, 1998—Decided March 4, 1999.

---

2 Occupational Safety & Health Administration.

Before Judges BROCHIN, KLEINER, and STEINBERG.

*James M. Mets*, argued the cause for appellant (*Schneider, Goldberger, Cohen, Finn, Solomon, Leder & Montalbano*, attorneys; *Mr. Mets*, of counsel and on the brief).

*Thomas J. Savage*, argued the cause for respondent Township of North Brunswick (*Savage & Serio*, attorneys; *Mr. Savage*, on the brief).

*Gary F. Stowell, Sr.*, argued the cause for respondent Thomas Maltese (*Helmer, Kassel & Stowell*, attorneys; *Todd J. Gelfand*, on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

In this declaratory judgment action, plaintiff Policemen's Benevolent Association ("PBA") filed a complaint in lieu of prerogative writs seeking to invalidate defendant Township of North Brunswick's ("Township") Ordinance 97–4 which created a police department without creating a position for a chief of police. Plaintiff's complaint asserted that the ordinance enacted by defendant violated the 1981 amendment to *N.J.S.A.* 40A:14–118 (*L.* 1981, *c.* 266).[1]

---

[1] *N.J.S.A.* 40A:14–118 provides:

> The governing body of any municipality, by ordinance, may create and establish, as an executive and enforcement function of municipal government, a police force, whether as a department or as a division, bureau or other agency thereof, and provide for the maintenance, regulation and control thereof. Any such ordinance shall, in a manner consistent with the form of government adopted by the municipality and with general law, provide for a *line of authority relating to the police function and for the adoption and promulgation by the appropriate authority of rules and regulations for the government of the force and for the discipline of its members.* The ordinance *may* provide for the appointment of a *chief of police* and such members, officers and personnel as shall be deemed necessary, the determination of their terms of office, the fixing of their compensation and the prescription of their powers, functions and duties, all as the governing body shall deem necessary for the effective government of the force. Any such ordinance, or rules and regulations, shall provide that the chief of police, *if such position is established,* shall be the head of the police force and that *he shall be directly responsible to the appropriate authority for the efficiency and*

On the return date of an order to show cause issued coincident with the filing of plaintiff's complaint, Assignment Judge Robert A. Longhi considered oral argument. The judge reserved decision, but in a subsequent written opinion declared Ordinance 97–4 valid and accordingly dismissed plaintiff's complaint.[2] Plaintiff appeals. We affirm.

## I

Ordinance 97–4 (the "Ordinance") was enacted on April 7, 1997,

---

*routine day to day operations* thereof, and that he shall, pursuant to policies established by the appropriate authority:

a. Administer and enforce rules and regulations and special emergency directives for the disposition and discipline of the force and its officers and personnel;

b. Have, exercise, and discharge the functions, powers and duties of the force;

c. Prescribe the duties and assignments of all subordinates and other personnel;

d. Delegate such of his authority as he may deem necessary for the efficient operation of the force to be exercised under his direction and supervision; and

e. Report at least monthly to the appropriate authority in such form as shall be prescribed by such authority on the operation of the force during the preceding month, and make such other reports as may be requested by such authority.

As used in this section, "appropriate authority" means the mayor, manager, or such other appropriate executive or administrative officer, such as a full-time director of public safety, or the governing body or any designated committee or member thereof, or any municipal board or commission established by ordinance for such purposes, as shall be provided by ordinance in a manner consistent with the degree of separation of executive and administrative powers from the legislative powers provided for in the charter or form of government either adopted by the municipality or under which the governing body operates.

Except as provided herein, the municipal governing body and individual members thereof shall act in all matters relating to the police function in the municipality as a body, or through the appropriate authority if other than the governing body.

[emphasis added.]

[2] A judgment memorializing Judge Longhi's decision was entered July 28, 1997, by the Acting Assignment Judge, Judson Hamlin.

and delineated the authority of the Director of Police.[3]   Under the Ordinance, the Director of Police is appointed by the Mayor and may be removed by the Mayor, unless the Council disapproves of the removal by a two-thirds majority vote.   On the date the Ordinance was enacted, the Director of Police was defendant Thomas Maltese, a civilian, who had been appointed in 1995.

Apparently in anticipation of the passage of the Ordinance, on March 31, 1997, Maltese issued a directive instructing all bureau commanders of the Township police department to report directly to him, rather than to Captain Stanke, the highest ranking officer on the police force.   This directive was apparently designed to comply with the municipal ordinance, and *N.J.S.A.* 40A:14–118, requiring that a municipality provide for a line of authority through which the appropriate authority adopts rules and regulations for the governance of the police force and for the discipline of its members.   The designation of the "appropriate authority" is required, whereas the office of police chief is optional.[4]   *Id.*

The Director of Police is appointed by the Mayor and may be removed by the Mayor, unless the Council disapproves of the

---

[3] One pertinent section of the Ordinance is Article II, Section 1 delineating the composition of the police department:

> Said Police Department shall consist of one (1) Director of Police and one (1) Police Inspector, and such Captains, Lieutenants, Sergeants, Police Officers, and civilian employees as deemed necessary and appropriate by the Director of Police in his discretion and judgment with the approval of the Mayor and Township council. . . .   The express purpose for renaming these offices is to establish a statutory line of authority from all police employees to a higher elected authority. . . .   No personnel may be appointed to the North Brunswick Police Department until they have satisfied all statutory requirements and have complied with the selection process and standards established by the Rules and Regulations adopted by the Appropriate Authority to govern said Police Department.

[4] As we interpret *N.J.S.A.* 40A:14–118, if the municipality chooses to create the position of police chief, the duties of the police chief are limited to those enumerated in the statute;   however, the police chief is subordinate to the "appropriate authority" in that the police chief must be responsible to and report to the "appropriate authority."

removal by a two-thirds majority vote. Article II, Section 2A of the ordinance names the appropriate authority:

> The North Brunswick Police Department shall come under the jurisdiction of the Appropriate Authority, which is hereby created pursuant to *N.J.S.A.* 40A:14–118. Said Appropriate Authority shall be the Director of Police. *The Appropriate Authority shall be directly responsible to the Mayor of the Township.* The Director of Police, in addition to those powers and duties enumerated in section 5 [5] of this article, shall be responsible for the operation of the police department pursuant to policies established by said Director and shall be responsible for the promulgation, updating, and/or ratification of the Rules and Regulations for police personnel which shall be known as the Rules and Regulations for the Police Department of the Township of North Brunswick.

[emphasis added.]

It is apparent from the record that Maltese's directive in anticipation of the enactment of the Ordinance prompted the PBA to initiate this litigation. PBA's primary contention is that the Ordinance empowers the Director of Police to promulgate rules and regulations, a legislative function. It thus asserted that the Ordinance which also empowers the Director with authority to control the daily functions of the police force, an executive function, impermissibly entrusts both a legislative function and an executive function to the same person. PBA therefore contends that two separate individuals must perform these two distinct functions.

---

[5] It is clear that Article II, Section 2A when read in conjunction with Article II, Section 5 gives the Director of Police the authority to bring disciplinary charges against members of the police department and the power to oversee all disciplinary proceedings.

Article II, Section 5 enumerates the powers of the Director of Police:

The Director of Police for the Township of North Brunswick shall:

A. Administer and enforce the Rules and regulations of the police department and any special emergency directive for the disposition and discipline of the department and its office and members;

B. Have, exercise and discharge the functions, powers, and duties of the Chief Executive Officer of the Police Department;

C. Prescribe the duties and assignments of all members and officers;

D. Delegate such authority as may be deemed necessary for the efficient operation of the police department to be exercised under the direction and control of the Director of Police.

PBA also contends entrusting one person with the responsibility for the duties of a police chief and of the "appropriate authority" contradicts *Hartmann v. Police Dep't of Ridgewood,* 258 *N.J.Super.* 32, 609 *A.2d* 61 (App.Div.1992) and *In re Baldinger,* 220 *N.J.Super.* 267, 531 *A.2d* 1087 (Law Div.1987). The judge rejected this contention and specifically noted that both *Hartmann* and *Baldinger* addressed the power struggle between the appropriate authority and the chief of police where the municipality had opted to create the position of a chief of police. We also note that *N.J.S.A.* 40A:14–118 has been construed in *Quaglietta v. Borough of Haledon,* 182 *N.J.Super.* 136, 440 *A.2d* 82 (Law Div.1981); *Gauntt v. Mayor and Council of City of Bridgeton,* 194 *N.J.Super.* 468, 477 *A.2d* 381 (App.Div.1984), *overruled in part, Falcone v. DeFuria,* 103 *N.J.* 219, 510 *A.2d* 1174 (1986); and more recently in *Grasso v. Borough Council of Glassboro,* 205 *N.J.Super.* 18, 500 *A.2d* 10 (App.Div.1985), *certif. denied,* 103 *N.J.* 453, 511 *A.2d* 639 (1986). *Quaglietta, Gauntt,* and *Grasso* similarly involved municipalities having a police chief. That, of course, is not the scenario created by Ordinance 97–4 and as such, those decisions have little applicability to the issues raised in this litigation.

## II

Citing *Falcone v. Defuria,* 199 *N.J.Super.* 549, 489 *A.2d* 1260 (Law Div.1984), *aff'd,* 199 *N.J.Super.* 554, 489 *A.2d* 1263 (App.Div. 1985), *aff'd,* 103 *N.J.* 219, 510 *A.2d* 1174 (1986), the judge noted in his opinion that *N.J.S.A.* 40A:14–118 was enacted as a legislative amendment designed "to provide a system for checks and balances in the position of Chief of Police, so that one person could not become a tyrant." *Falcone* particularly noted the tensions that exist between the appropriate authority and the chief of police where a municipality has opted to create a police force with a chief of police. Unlike other reported decisions interpreting *N.J.S.A.* 40A:14–118, *see* Section I, *supra,* here Ordinance 97–4 involves the somewhat unique, but clearly permissible, example of a municipality exercising its option of creating a police force without designat-

ing a chief of police. "The ordinance *may* provide for the appointment of a *chief of police* ... as the governing body shall deem necessary for the effective government of the force." *N.J.S.A.* 40A:14–118 (emphasis added).

In construing the Ordinance and *N.J.S.A.* 40A:14–118, the judge rejected PBA's argument and specifically concluded:

There is nothing in the Township ordinance which is inconsistent with the statute or case law. The governing body, the township council, as well as the state legislature, create the laws. The police are part of the executive branch and enforce the laws. As the executive administrator, the Director of Police is responsible for rules and regulations within the department which will help the department in fulfilling its duty to execute the laws. This is an appropriate function of the executive branch, and the North Brunswick ordinance is an appropriate use of the municipality's power to create and maintain a police force.

### III

■ It is fundamental that " 'the meaning of a statute must ... be sought in the language in which the act is framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms.' " *Sheeran v. Nationwide Mutual Ins. Co., Inc.*, 80 *N.J.* 548, 556, 404 *A.2d* 625 (1979) (quoting *Caminetti v. United States*, 242 *U.S.* 470, 485, 37 *S.Ct.* 192, 194, 61 *L. Ed.* 442, 452 (1917)); *see Board of Educ. of Tp. of Neptune v. Neptune Tp. Educ. Ass'n*, 144 *N.J.* 16, 25, 675 *A.2d* 611 (1996); *State v. Maguire*, 84 *N.J.* 508, 529, 423 *A.2d* 294 (1980); *Vreeland v. Byrne*, 72 *N.J.* 292, 302, 370 *A.2d* 825 (1977); *Finn v. Mayor and Council of Norwood*, 249 *N.J.Super.* 230, 232, 592 *A.2d* 283 (App.Div.1991); *DeHart v. Bambrick*, 177 *N.J.Super.* 541, 549, 427 *A.2d* 113 (App.Div.1981); *Raubar v. Raubar*, 315 *N.J.Super.* 353, 360, 718 *A.2d* 705 (Law Div.1998) (citing *Matter of Resyn Corp.*, 945 *F.2d* 1279, 1283 (3d Cir.1991) (stating that, where the legislature has expressed its intention in plain language and the legislative history does not demonstrate a contrary purpose, the court is bound to follow the statutory provision as written)); *see also* 2A *Sutherland Statutory Construction* § 46.01 5th Ed. (1992).

*N.J.S.A.* 40A:14–118 clearly requires that a municipality must have an appropriate authority to oversee the police department.

The appropriate authority may be one of the enumerated persons or groups (mayor, executive officer, director, governing body, etc.) or the municipality may create a body specifically to become the appropriate authority. *N.J.S.A.* 40A:14–118. The appropriate authority adopts rules and regulations for the department, and the discipline of the members; additionally, the appropriate authority establishes policies for the daily operations of the department. The appropriate authority is a civilian position.

■ By its challenge to the Ordinance, PBA questions whether a Director of Police in a municipality that has opted not to name a chief of police may assume some of the duties normally assigned to the chief of police in the daily operations of the police department. We think it obvious that, where a municipality has opted not to name a chief of police, the Director of Police is vested with such authority.

■ North Brunswick has designated the Director of Police as the "appropriate authority" within the framework of the statutory scheme envisioned by the Legislature in enacting the amendment to *N.J.S.A.* 40A:14–118. Without a chief of police, all police officers are subordinate to the Director of Police in accordance with rank, as delineated in the Ordinance, Article II, Section I, and the Director is entitled to assume duties ordinarily assigned to a chief of police, including directing daily operations of the police department. In fact, the Ordinance provides that the Director of Police be responsible for the operation of the police department, establish policies for the department, and promulgate rules for the personnel. These responsibilities include prescribing duties and daily assignments of police officers. It is abundantly clear that the Legislature recognized that if a municipality opted not to create the position of chief of police, a municipality's police department would require leadership in the daily operations of the department. *N.J.S.A.* 40A:14–118 does not prohibit the Director of Police from also being the "appropriate authority," despite the

fact that the Director of Police is also required to report to the Mayor.[6]

On appeal, PBA also raises an argument, rejected in the Law Division, that the daily operations of the police force should be the responsibility of the highest ranking certified police officer. However, that argument is specifically rejected by the clear legislative mandate which permits a municipality to opt not to have a chief of police and to designate an "appropriate authority" to supervise the police department. *N.J.S.A.* 40A:14–118 does not include the highest ranking certified police officer in a police department as being entitled to be named as "appropriate authority." We therefore agree with the Law Division judge that PBA's contention is without legal merit.

Affirmed.

---

[6] As noted, *N.J.S.A.* 40A:14–118 permits a municipality to designate the Mayor as the "appropriate authority." Here, by Ordinance 97–4, North Brunswick has designated the Director of Police as the "appropriate authority," yet the Ordinance also requires the Director of Police to report to the Mayor, who could have been, but is not under this Ordinance, the designated "appropriate authority."