746 A.2d 511

JOHN REUTER AND BERNARD HART, PLAINTIFFS–RESPONDENTS, v. THE BOROUGH COUNCIL OF THE BOROUGH OF FORT LEE, JOHN ORSO, INDIVIDUALLY AND AS CHIEF OF POLICE OF THE BOROUGH OF FORT LEE, NEW JERSEY DEPARTMENT OF PERSONNEL, DEFENDANTS–RESPONDENTS, AND JEREMIAH J. O'SULLIVAN, DEFENDANT–APPELLANT, AND WILLIAM PEPPARD, DEFENDANT.

JEREMIAH J. O'SULLIVAN, PLAINTIFF–APPELLANT, v. BOROUGH OF FORT LEE, MAYOR AND MEMBERS OF THE FORT LEE BOROUGH COUNCIL, THOMAS R. TESSARO, DEFENDANTS–RESPONDENTS AND THE NEW JERSEY DEPARTMENT OF PERSONNEL, DEFENDANT.[1]

Superior Court of New Jersey
Appellate Division

Argued February 14, 2000—Decided March 1, 2000.

---

[1] This appeal actually arises from four separate lawsuits that were ultimately consolidated as two, and then as one. The parties, however, use a caption that includes only two of those actions. To avoid confusion, we use their caption.

548

Before Judges PETRELLA, CONLEY and COBURN.

*Dennis Calo*, argued the cause for appellant (*Calo Agostino*, attorney; *Mr. Calo*, on the brief).

*Dennis J. Oury*, argued the cause for respondent Mayor Jack Alter and Fort Lee Borough Council members Lawrence Goldberg, Jan Goldberg, Thomas Meyers, and Joan Voss (the Alter respondents) (*Oury & Mizdol* attorneys; *Robert E. Laux*, on the brief).

*David L. Rosenberg*, argued the cause for respondents John Reuter and Bernard Hart (*Klausner, Hunter & Rosenberg*, attorneys; *Mr. Rosenberg*, of counsel and on the brief).

*Joseph R. Mariniello*, argued the cause for respondent Thomas Tessaro (*Mr. Mariniello* joins in the brief by the Alter respondents).

*Brian M. Chewcaskie*, argued the cause for respondent Borough of Fort Lee (*Mr. Chewcaskie* joins in the brief by the Alter respondents).

*Giblin & Giblin*, attorneys for respondent John Orso, have not filed a brief.

*John J. Farmer, Jr.*, Attorney General of New Jersey, attorney for Department of Personnel, has not filed a brief.

*Nowell Amoroso*, attorneys for Fort Lee Borough Council members Cathy LoFaro, John Criscione and Donald Porrino, have not filed a brief.

The opinion of the court was delivered by

CONLEY, J.A.D.

These consolidated matters have been generated by a dispute in 1996 between the Mayor of the Borough of Fort Lee and the then Borough Council over the appointment of promotional positions in the Borough's Police Department. At issue before us are the Council's actions in creating a third position of Deputy Chief and appointing appellant Jeremiah O'Sullivan to that position in September 1996 and, in December 1996, appointing him to the then vacant position of Police Chief.[2] These actions were not effectuated by ordinance and were challenged by the Mayor and by the two other competitors for the Police Chief position, John Reuter and Bernard Hart, in their respective complaints in lieu of prerogative writs. On motion for summary judgment in the consolidated actions that resulted, O'Sullivan's appointment to the position of Deputy Chief was set aside based upon the motion judge's determination that the position to which O'Sullivan was appointed did not legally exist as it had not been created by ordinance. The judge also determined that the permanent appointment of O'Sullivan as Deputy Chief was violative of a Fort Lee ordinance which gave the Mayor thirty days to fill a vacancy before the Council could act. Since the Police Chief vacancy was open only to Deputy Chiefs, O'Sullivan's appointment thereto was also set aside and O'Sullivan was restored to his position of Captain which he had held prior to the Deputy Chief appointment.

Various other issues were raised below, including alleged Open Public Meeting Act violations in connection with the December 1996 appointment and whether the Council's actions were violative of civil service rules and regulations. On appeal, O'Sullivan contends:

POINT I    THE 1996 FORT LEE COUNCIL PROMOTED O'SULLIVAN TO
A VALID AND VACANT DEPUTY CHIEF POSITION AND COMPLIED

---

[2] This appointment was later rescinded on January 1, 1997, by a newly constituted Council. Instead, that Council appointed a committee of three to exercise the duties of Acting Chief. O'Sullivan was one of the three but another, Thomas Tassaro, was ultimately appointed Police Chief.

WITH THE CIVIL SERVICE ACT AND ALL OTHER PERTINENT STATE STATUTES IN EFFECTING THE PROMOTION AND THEREFORE THE TRIAL COURT SHOULD HAVE GRANTED SUMMARY JUDGMENT TO O'SULLIVAN ON THESE ISSUES.

POINT II   THE 1996 FORT LEE COUNCIL DID NOT VIOLATE THE OPEN MEETINGS ACT IN PROMOTING O'SULLIVAN TO CHIEF OF POLICE AND THEREFORE THE TRIAL COURT SHOULD HAVE GRANTED SUMMARY JUDGMENT TO O'SULLIVAN ON THIS ISSUE.

POINT III   THE 1996 FORT LEE COUNCIL COMPLIED WITH THE CIVIL SERVICE ACT AND THE REGULATIONS PROMULGATED THERETO IN PROMOTING O'SULLIVAN TO CHIEF OF POLICE AND THEREFORE THE TRIAL COURT SHOULD HAVE GRANTED SUMMARY JUDGMENT TO O'SULLIVAN ON THIS ISSUE.

POINT IV   THE 1997 COUNCIL COULD NOT REMOVE O'SULLIVAN AS CHIEF OF POLICE AND PROMOTE TESSARO TO THAT POSITION WITHOUT GOOD CAUSE AND A HEARING AND THEREFORE THE TRIAL COURT SHOULD HAVE GRANTED SUMMARY JUDGMENT TO O'SULLIVAN ON THIS ISSUE.

POINT V   THERE WERE NO MATERIAL ISSUES OF FACT ON THE ALLEGATIONS OF CONFLICTS OF INTEREST IN THE VOTES TO ADOPT ORDINANCE 96-30 OR THE PROMOTION OF O'SULLIVAN AND THEREFORE THE TRIAL COURT SHOULD HAVE GRANTED SUMMARY JUDGMENT TO O'SULLIVAN ON THESE ISSUES.

POINT VI   THERE WERE NO GENUINE ISSUES OF MATERIAL FACT ON THE ALLEGATIONS OF AN ILLEGAL CONSPIRACY TO PROMOTE O'SULLIVAN TO CHIEF OF POLICE AND THEREFORE THE TRIAL COURT SHOULD HAVE GRANTED SUMMARY JUDGMENT TO O'SULLIVAN ON THIS ISSUE.

We have considered all of these arguments and the various responses thereto.  We are convinced that the motion judge correctly concluded that O'Sullivan's appointment to the position of Deputy Chief was invalid because that position had not been created by ordinance as required by the governing statute, *N.J.S.A.* 40A:14–118.  It was conceded during oral argument by O'Sullivan's counsel that if that is so then his appointment to the Police Chief position cannot stand.  We therefore affirm the order returning O'Sullivan to his prior permanent position of Captain on the basis of the motion judge's construction of *N.J.S.A.* 40A:14–118.  In doing so, we do not address the various other issues raised by the parties.  Neither do we deem it necessary to engage in a recitation of the rather convoluted procedural and factual history of the present dispute between the parties.  Suffice it to

say that as of the time of O'Sullivan's appointment to a Deputy Chief position, and according to the then Fort Lee Police Department Organizational Chart, the Department consisted of one Chief, two Deputy Chiefs, four Captains, three Lieutenants, fourteen sergeants, sixty-nine Police Officers, and twenty-four Supervisors.[3] The O'Sullivan appointment was to a third Deputy Chief position.

It is unclear whether that position had been created before O'Sullivan's appointment or was created by his appointment. As presented to us, however, the parties seem to agree that the third Deputy Chief position to which O'Sullivan was appointed was created by a resolution pursuant to Ordinance # 81–26. That ordinance, apparently adopted in 1981, provided for the establishment of a police department and, as to its "formation and rank," provided in § 2–15.2:

> a. The police department shall consist of a chief, and *such number of* deputy chiefs, inspectors, captains, lieutenants, sergeants, patrolmen and special officers *as may be determined from time to time by resolution of the mayor and council.*
> [*Emphasis added.*]

The ordinance, then, created the position of Chief of Police. But it delegated to the Mayor and Council the discretion to create and fill such other positions in the line of command as they deem necessary, to be exercised by resolutions.

We pause here to note the substantial difference between a municipal action by ordinance and municipal action by resolution. Of course, a municipality may exercise its powers in either fashion. *Inganamort v. Borough of Fort Lee,* 72 *N.J.* 412, 417, 371 *A.*2d 34 (1977). But the two are quite distinct:

> An ordinance is distinctively a legislative act; a resolution, generally speaking, is simply an expression of opinion or mind concerning some particular item of business coming within the legislative body's official cognizance, ordinarily ministerial in character and relating to the administrative business of the municipality. Thus, it may be stated broadly that all acts that are done by a municipal

---

[3] There is no issue before us relating to the viability of any of the appointments to and creation of these various positions and we express no view as to that.

corporation in its ministerial capacity and for a temporary purpose may be put in the form of resolutions, and that matters upon which the municipal corporation desires to legislate must be put in the form of ordinances.

[*Id.* at 418, 371 *A.*2d 34 (quoting McQuillin, *Municipal Corporations,* § 14.02 (3d ed.1973).)]

Ordinances require two readings, publication and hearing before passage; resolutions may be introduced and passed at the same meeting. *N.J.S.A.* 40:49-1, -2. Public notice and participation are the two important interests embodied in the rule that an action statutorily required to be taken by ordinance cannot be accomplished by a resolution. *Inganamort v. Borough of Fort Lee, supra,* 72 *N.J.* at 420, 371 *A.*2d 34. *See Nolan v. Witkowski,* 56 *N.J.Super.* 480, 495, 153 *A.*2d 745 (App.Div.1959), *aff'd,* 32 *N.J.* 426, 161 *A.*2d 102 (1960) ("[a] resolution may be introduced and passed in a few minutes, without the knowledge of any one except those present. An ordinance, on the other hand, is a 'deliberative process requiring notice to the public.'") (quoting *Handlon v. Town of Belleville,* 4 *N.J.* 99, 108, 71 *A.*2d 624 (1950)). Presumably, where the Legislature delegates certain authority to a municipality but requires that it be implemented by ordinance, it deems the exercise of that authority significant enough to be accompanied by the formality and public involvement that the adoption by ordinance requires. *See for example, Nolan v. Witkowski, supra,* 56 *N.J.Super.* at 496, 153 *A.*2d 745 ("[t]he salutory purposes of the provisions which compel the use of an ordinance [for the establishment of certain positions] are defeated if the public is not informed of at least the approximate salary attached to each office and the maximum number of officers who will be in receipt thereof. An ordinance which does not tell the public these things does not comply with the statutes, for then the public is not informed of the increase of the financial burden of local government.").

We turn to the implementing statute here, *N.J.S.A.* 40A:14-118. It provides:

The governing body of any municipality, by ordinance, may create and establish, as an executive and enforcement function of municipal government, *a police force,* whether as a department or as a division, bureau or other agency thereof, and

provide for the maintenance, regulation and control thereof. *Any such ordinance shall,* in a manner consistent with the form of government adopted by the municipality and with general law, *provide for a line of authority relating to the police function* and for the adoption and promulgation by the appropriate authority of rules and regulations for the government of the force and for the discipline of its members. *The ordinance may provide for the appointment of a chief of police and such members, officers and personnel as shall be deemed necessary, the determination of their terms of office, the fixing of their compensation and the prescription of their powers, functions and duties,* all as the governing body shall deem necessary for the effective government of the force. Any such ordinance, or rules and regulations, shall provide that the chief of police, if such position is established, shall be the head of the police force and that he shall be directly responsible to the appropriate authority for the efficiency and routine day to day operations thereof. . . .

[Emphasis added.]

Facially, this statute delegates to a municipality the authority to create a police force. But it must do so by ordinance and the ordinance must establish the "line of authority," *i.e.,* organizational chart, and, when it is determined such positions are necessary, provide for the appointment of a Chief and other department personnel. The ordinance must also establish the terms of office, compensation, and responsibility. Evidently the Legislature has considered the creation of a police department and its organizational composition, as well as the terms, compensation, and duties of the positions that form that organizational composition, as sufficiently legislative in nature to require the formalization and public impute of actions by ordinance. *See Nolan v. Witkowski, supra,* 56 *N.J.Super.* at 495–96, 153 *A.*2d 745; *Davaillon v. City of Elizabeth,* 121 *N.J.L.* 380, 381, 2 *A.*2d 369 (Sup.Ct.1938).

What did Fort Lee's implementing ordinance, Ordinance # 81–26, do? It created a Police Department. It created the position of Chief of Police. But, as we have previously stated, it left to the discretion of the Mayor and Council, to exercise by way of resolution, the creation and filling of the remaining structure of the department. To be sure, the ordinance refers to those positions that could constitute a police force, *i.e.,* deputy chiefs, inspectors, captains, lieutenants, sergeants, patrolmen and special officers. But it does not create those positions or establish how many may be necessary to form the structure of the police

department. It leaves that solely to be determined by the rather easy use of a resolution, easy at least in terms of avoidance of formality and public input. Despite the presumption of validity that is ordinarily accorded municipal ordinances, *Fanelli v. City of Trenton*, 135 *N.J.* 582, 589, 641 *A.*2d 541 (1994), our plain reading of the statute and the applicable precedent convinces us that delegation to the Mayor and Council of the power to create and establish the organizational composition of the police department, aside from the Chief of Police, by resolution is inconsistent with the legislative proscriptions of *N.J.S.A.* 40A:14–118, at least as to the Deputy Chief position at issue before us.

We have previously set forth our reading of the statute. As to the applicable precedent, we think the motion judge correctly looked to *City Council v. Perrapato*, 117 *N.J.Super.* 184, 284 *A.*2d 184 (App.Div.1971). There, the City Council of Garfield brought an action challenging certain "duty assignments" by the chief of police. In part, the governing ordinance provided that the City Council "shall ... appoint from time to time such number [of] school marshalls as may appear needed." *Id.* at 189, 284 *A.*2d 184. We held that this provision was invalid, citing *Keegan v. Mayor of Bayonne*, 81 *N.J.L.* 120, 122, 78 *A.* 1053 (Sup.Ct.1911). *Id.* at 195, 284 *A.*2d 184.

*Keegan* concerned whether an officer's appointment as a police sergeant was valid as it was not accomplished by a specific ordinance but rather pursuant to a general ordinance that delegated to the mayor and the council the discretion to appoint "two or more members of the police force of said city who shall be designated as sergeants of police." *Keegan v. Mayor of Bayonne, supra,* 81 *N.J.L.* 120–21, 78 *A.* 1053 (emphasis omitted). The charter enacted by the Legislature directed the governing body to adopt an ordinance "to establish, regulate and control a day and night police, and to regulate and define their duties and compensation." *Id.* at 120, 78 *A.* 1053. The city's general ordinance, and the officer's appointment thereunder, was deemed invalid as it "thereby establish[ed], regulat[ed] and controll[ed] the police force

by a method other than by ordinance." *Id.* at 122, 78 *A.* 1053. The fixing of the number of officers and prescription of their duties was viewed as an "essential part of the establishment and regulation of a police department," which the charter required to be accomplished by ordinance. Permitting the Mayor and Council to appoint as many police sergeants "as they may see fit," was inconsistent with that requirement. *Ibid. See also Handlon v. Town of Belleville, supra,* 4 *N.J.* at 108, 71 *A.*2d 624; *Nolan v. Witkowski, supra,* 56 *N.J.Super.* at 493–94, 153 *A.*2d 745; *Wagner v. Borough of Lodi,* 56 *N.J.Super.* 204, 210–11, 152 *A.*2d 389 (App.Div.), *certif. denied,* 30 *N.J.* 599, 154 *A.*2d 672 (1959); *Hale v. Council of Kearny,* 99 *N.J.L.* 334, 335–36, 123 *A.* 724 (Sup.Ct. 1924).

In *Handlon,* for instance and in the context of a civil service appeal from a removal from office, the Supreme Court held that the position at issue, clerk of a court, "has no existence in the law, for lack of an ordinance creating it." *Handlon v. Town of Belleville, supra,* 4 *N.J.* at 108, 71 *A.*2d 624. As the court explained:

> It is settled law that under [the then applicable statute] a municipal office or position, if not created by statute, can come into being only by ordinance of the local governing body. The sense of the statute is that, because the creation of offices and positions involves an increase of the financial burden of local government, the power is exercisable only by ordinance, a deliberative process requiring notice to the public.
>
> *[Ibid.]*

Not unlike *N.J.S.A.* 40A:14–118, the statute in *Handlon* provided in part:

> The governing body of every municipality may make, amend, repeal and enforce ordinances to [p]rescribe and define, except as otherwise provided by law, the duties and terms of office or employment, of all officers and employees; and to provide for the employment and compensation of such officials and employees, in addition to those provided for by statute, as may be deemed necessary for the efficient conduct of the affairs of the municipality....
>
> [*N.J.S.A.* 40:48–1.]

Even when the ordinance procedure is used, if it does not specify the number of positions to be filled but leaves that to be determined through the appointment process, positions created by

such process have been held not legally created. In *Nolan v. Witkowski, supra,* 56 *N.J.Super.* at 493–94, 153 *A.2d* 745, for instance, the trial judge had held that thirteen assistant corporation counsel positions were not validly created because the ordinance merely listed the title "Assistant Corporation Counsel" and showed a salary range, without indicating how many persons would hold that position. We affirmed, observing:

> The salutary purposes of the provisions which compel the use of an ordinance are defeated if the public is not informed of at least the approximate salary attached to each office and the maximum number of officers who will be in receipt thereof. An ordinance which does not tell the public these things does not comply with the statutes, for then the public is not informed of the increase of the financial burden of local government.
>
> [*Id.* at 496, 153 *A.2d* 745 (quotation omitted).]

Similarly, in *Wagner v. Borough of Lodi, supra,* 56 *N.J.Super.* 204, 152 *A.2d* 389, we held that since the office of the borough attorney and the salary or compensation to be paid to the holder thereof required enactment by ordinance, in the absence of such ordinance the office was non-existent. In that case, the plaintiff purportedly had been appointed by a resolution passed in 1955, and then dismissed by another resolution in 1958. *Id.* at 206, 152 *A.2d* 389. There was, thus, no position to which the plaintiff could claim tenure rights. *Id.* at 212, 152 *A.2d* 389.

As we have said, the motion judge relied on *City Council v. Perrapato, supra,* 117 *N.J.Super.* at 195, 284 *A.2d* 184. O'Sullivan contends that that case is no longer controlling precedent as its underlying authority for the proposition for which it is cited, *Keegan v. Mayor of Bayonne, supra,* 81 *N.J.L.* 120, 78 *A.* 1053, has been overruled by *Jansco v. Waldron,* 70 *N.J.* 320, 324, 360 *A.2d* 321 (1976). We do not read *Jansco* to have entirely abrogated *Keegan.* *Jansco* had nothing whatsoever to do with municipal action in the creation of positions as part of a police department's organizational composition. In *Jansco,* the Supreme Court upheld an ordinance passed by the City of Trenton creating and establishing a division of police which delegated to the Director of Public Safety the authority to prepare, and with the approval of the mayor, adopt rules and regulations for the control, disposition and

discipline of the division. A police officer charged with misconduct challenged the rules and regulations that had been promulgated by the director. He contended they were invalid under *N.J.S.A.* 40A:14–118 because they were not promulgated by ordinance. In the context of a subdelegation of rulemaking power over police discipline, the Court construed *N.J.S.A.* 40A:14–118 as "vest[ing] discretion in the governing body, by ordinance, either to exercise the rulemaking power itself, or to subdelegate this power to a subordinate person or body having expertise in the matter." *Jansco v. Waldron, supra,* 70 *N.J.* at 326, 360 *A.*2d 321. The portion of the statute that the Court so construed was the provision which empowers the governing body to "adopt and promulgate rules and regulations for the government of the department and force and for the discipline of its members." It did not focus on or address the other provisions of the statute, including those concerning the establishment of positions. The Court discussed *Keegan* in the following fashion:

> The legislative scheme discussed herein was reviewed in *Smith v. Tp. of Hazlet,* [63 *N.J.* 523, 309 *A.*2d 210 (1973)], where we stated that the New Jersey cases have insisted upon strict compliance with the statutory grant of power where the issue has concerned the regulation or control of a police department or police personnel. *Id.,* 63 *N.J.* at 528, 309 *A.*2d 210. *Harvey v. Poole,* 17 *N.J. Misc.* 165, 7 *A.*2d 630 (Ct. of Com. Pl.1939) and *Keegan v. Bayonne,* 81 *N.J.L.* 120, 78 *A.* 1053 (Sup.Ct.1911) were cited as examples of this policy. However, the *Smith* case was concerned with the inherent power of the office of Chief of Police apart from the powers derived from the town governing body, and is not applicable to the case *sub judice.* To the extent that *Harvey v. Poole* and *Keegan v. Bayonne* are contrary to our present holding, they are hereby disapproved.
>
> [*Id.* at 328, 360 *A.*2d 321.]

In our view, this is not to say that *Keegan*'s specific holding, not mentioned by the Court and which had nothing to do with disciplinary rules, is no longer good authority.

■ Moreover, we also observe that at the time *Jansco* was decided, *N.J.S.A.* 40A:14–118 provided:

> The governing body of any municipality, by ordinance, may create and establish a police department and force and provide for the maintenance, regulation and control thereof, and except as otherwise provided by law, appoint such members, officers and personnel as shall be deemed necessary, determine their terms of office, fix their compensation and prescribe their powers, functions and duties and

> adopt and promulgate rules and regulations for the government of the department and force and for the discipline of its members.
>
> [*Jansco v. Waldron, supra*, 70 *N.J.* at 324, 360 *A.*2d 321.]

In its present form, the statute is more emphatic—the ordinance establishing a police force "shall . . . provide for a line of authority relating to the police function." A line of authority means an organizational chart. *See for example, Falcone v. De Furia*, 103 *N.J.* 219, 222–23 n. 2, 510 *A.*2d 1174 (1986).

We address O'Sullivan's reliance upon *Mullin v. Ringle*, 27 *N.J.* 250, 142 *A.*2d 216 (1958), and *PBA v. Township of N. Brunswick*, 318 *N.J.Super.* 544, 723 *A.*2d 1287 (App.Div.), *certif. denied*, 161 *N.J.* 150, 735 *A.*2d 575 (1999). *Mullin* involved a challenge by a taxpayer to the creation by the City of Jersey City by ordinance of a park police department and appointment of a park police chief and park patrolmen as *ultra vires*. The actions of the City were upheld as within its statutory powers. The challenge to the exercise of these powers, however, had nothing to do with whether an ordinance was required to properly effectuate the creation of the positions and appointments thereto. Indeed, the City in *Mullin* had in fact acted by ordinance.

What we said about *Mullin*, and another case relied upon by O'Sullivan here, *Hamill v. City of Clifton*, 10 *N.J. Misc.* 843, 160 *A.* 882 (Sup.Ct.1932), in *Nolan v. Witkowski, supra*, 56 *N.J.Super.* at 496–98, 153 *A.*2d 745, is worth repeating:

> Plaintiffs cite *Mullin v. Ringle*, 27 *N.J.* 250, 142 *A.*2d 216 (1958), and *Hamill v. City of Clifton*, 10 *N.J. Misc.* 843, 160 *A.* 882 (Sup.Ct.1932), for the proposition that the ordinance need not fix the number of officers. The question is not discussed in the opinion in the *Mullin* case. Plaintiffs assert that at the oral argument of the *Mullin* case in the Supreme Court the point was raised by counsel, although it had not been raised below, and that thereafter counsel wrote the Supreme Court supplementing their oral discussion of the point. Since the question is not mentioned in the *Mullin* opinion we may assume that the Supreme Court elected not to pass upon it. In any event, we may not accept the silence of the *Mullin* opinion as a decision in favor of the plaintiffs.
>
> In the *Hamill* case the appointment of firemen was attacked because the ordinance under which they were appointed "does not fix the number of firemen." Strangely enough, even though, as we have shown *supra*, the *Keegan* case was being cited and followed in other jurisdictions, it is not mentioned in *Hamill*. Plainly it was not brought to the attention of the court, for the court upheld the

appointments upon the authority of two cases which had not dealt with the subject at all–namely, *Anderson v. [Township of] Weehawken,* 97 *N.J.L.* 371, 118 *A.* 208 (Sup.Ct.1922), and *Green v. City of Cape May,* 41 *N.J.L.* 45 (Sup.Ct.1879). The *Anderson* case held that since the firemen there involved were appointed by resolution "the position of each individual" was properly abolished by resolution. The court did say that the ordinance provided the said "committee may from time to time appoint such additional members to the fire department ... as said committee may determine," but the exact words of the ordinance are not given in the opinion, nor was the validity of such an ordinance questioned or discussed.

In *Green v. City of Cape May, supra,* the only question involved was whether the charter of Cape May required an ordinance to authorize the purchase of equipment for the fire department. No *statute* was involved. *Cf. [Coultress v. City of San Antonio,* 108 *Tex.* 150, 179 *S.W.* 515 (1915)]. In addition, it is noteworthy that in the *Green* case the court said that it was "the temporary and recurring necessities of the department" that may be provided for by resolution-like "employment of hands, the purchase of oil, etc." Obviously, the court was not talking about law officers who were to receive up to $10,000 a year, or the 1879 equivalent thereof. Of course a municipality may from time to time need to hire employees whose work and usefulness are such as to make it impossible to foretell even approximately the numbers that will be needed. Perhaps in such case the ordinance need not state numbers. We indicate no opinion on that point, for no such considerations can be advanced to justify an ordinance under which a municipality may by resolution appoint as many high salaried (and part time) law officers as it pleases. (Here, 19 initially; total salaries $132,000 annually).

It may be that *Hamill* might have been decided differently had *Keegan* been cited to the court. In any event, we consider *Keegan* as expressing the correct rule.

[*Ibid.*]

We agree.

O'Sullivan's reliance upon *PBA v. Township of Brunswick,* 318 *N.J.Super.* 544, 723 *A.*2d 1287 (App.Div.), *certif. denied,* 161 *N.J.* 150, 735 *A.*2d 575 (1999), is similarly misplaced. There, the PBA challenged the provisions of the township's ordinance which created a police department without creating a position for Chief of Police. We affirmed the trial judge's determination that the township need not create the Chief of Police position but, rather, need only designate a position of "appropriate authority" and that the Director of Police satisfied that requirement. That clearly is not the issue before us.

To be sure, municipal governing bodies have broad discretion in the administration of their respective police departments.

*City of Jersey City v. Jersey City PBA*, 154 *N.J.* 555, 572, 713 *A.2d* 472 (1998) ("the courts and the Legislature have long recognized that because police officers are different from other public employees, the scope of discretion accorded to the public entities that administer police departments is necessarily broad ..." (citing *N.J.S.A.* 40A:14–118)). But being endowed with such discretion does not mean that the discretion need not be exercised by way of a validly enacted ordinance where that is so required by statute. We are convinced that the trial judge correctly determined that the creation of the third Deputy Chief position to which O'Sullivan was appointed requires action by ordinance.

Affirmed.