768 A.2d 769

JOHN REUTER AND BERNARD HART, PLAINTIFFS–RESPON-
DENTS, v. THE BOROUGH COUNCIL OF THE BOROUGH OF
FORT LEE, DEFENDANT–RESPONDENT, AND JOHN ORSO,
INDIVIDUALLY AND AS CHIEF OF POLICE OF THE BOR-
OUGH OF FORT LEE, NEW JERSEY DEPARTMENT OF PER-
SONNEL AND WILLIAM PEPPARD, DEFENDANTS, AND
JEREMIAH J. O'SULLIVAN, DEFENDANT–APPELLANT.

JEREMIAH J. O'SULLIVAN, PLAINTIFF–APPELLANT, v. BOR-
OUGH OF FORT LEE, MAYOR AND MEMBERS OF THE FORT
LEE BOROUGH COUNCIL AND THOMAS R. TESSARO, DE-
FENDANTS–RESPONDENTS, AND THE NEW JERSEY DE-
PARTMENT OF PERSONNEL, DEFENDANT.

Argued Jan. 3, 2001—Decided March 29, 2001.

*Dennis Calo* argued the cause for appellant (*Calo Agostino,* attorneys).

*Brian M. Chewcaskie* argued the cause for respondent Borough of Fort Lee (*Gittleman, Muhlstock & Chewcaskie,* attorneys).

*Robert E. Laux* submitted a letter in lieu of brief on behalf of respondents Mayor Jack Alter and Council Members Lawrence Goldberg, Jan Goldberg, Thomas Meyers and Joan Voss (*Oury & Mizdol,* attorneys).

*David L. Rosenberg* submitted a letter in lieu of brief on behalf of respondents John Reuter and Bernard Hart (*Klausner, Hunter & Rosenberg,* attorneys).

*Joseph R. Mariniello* submitted a letter in lieu of brief on behalf of respondent Thomas R. Tessaro.

PER CURIAM.

In 1981, the Borough of Fort Lee enacted Ordinance 2:15.2(a) which provides that the number of positions in the police force may be established by resolution. In 1996, Captain Jeremiah O'Sullivan was appointed Deputy Chief, a position that had been created pursuant to resolution. Thereafter, he was promoted to Chief.

Subsequently, the mayor and two competitors for the Police Chief position filed a lawsuit challenging the legitimacy of O'Sullivan's appointment as Deputy Chief. They argued that because the Deputy Chief position was not established according to law, O'Sullivan's tenure in it was also illegal, thus eliminating him as a possible Chief. The trial court held that the Deputy Chief posi-

tion to which O'Sullivan had been appointed was invalid because it was created by resolution and not by ordinance thus contravening *N.J.S.A.* 40A:14–118. That statute provides in relevant part:

> The governing body of any municipality, by ordinance, may create and establish, as an executive and enforcement function of municipal government, a police force, whether as a department or as a division, bureau or other agency thereof, and provide for the maintenance, regulation and control thereof. Any such ordinance shall, in a manner consistent with the form of government adopted by the municipality and with general law, provide for a line of authority relating to the police function and for the adoption and promulgation by the appropriate authority of rules and regulations for the government of the force and for the discipline of its members. The ordinance may provide for the appointment of a chief of police and such members, officers and personnel as shall be deemed necessary, the determination of their terms of office, the fixing of their compensation and the prescription of their powers, functions and duties, all as the governing body shall deem necessary for the effective government of the force.
>
> [*N.J.S.A.* 40A:14–118.]

As a result of the trial court's ruling, O'Sullivan was removed as Chief and returned to the position of Captain. O'Sullivan appealed. The Appellate Division affirmed, holding that the plain language of *N.J.S.A.* 40A:14–118 and the policies underlying it require the type and number of police positions to be created by ordinance.

■ We affirm that determination substantially for the reasons expressed in the Appellate Division's thorough and thoughtful opinion. 328 *N.J.Super.* 547, 746 *A.*2d 511 (App.Div.2000). That the Legislature would have insisted that police positions be established by ordinance is consistent with the significance of those positions and their importance to the public. *Irvington PBA, Local # 29 v. Town of Irvington,* 170 *N.J.Super.* 539, 546, 407 *A.*2d 377 (App.Div.1979) (observing that police officer is " 'a special kind of public employee' ") (quoting *Moorestown Tp. v. Armstrong,* 89 *N.J.Super.* 560, 566, 215 *A.*2d 775 (App.Div.1965), *certif. denied,* 47 *N.J.* 80, 219 *A.*2d 417 (1966)), *certif. denied.,* 82 *N.J.* 296, 412 *A.*2d 801 (1980). Likewise, the continuing budgetary implications of the creation of police positions warrant the formality of an ordinance.

 We part company from the Appellate Division in connection with its second conclusion—that O'Sullivan has no entitlement to the position of Chief. Although we agree that police positions should be established by ordinance, the interests of justice and fairness require that that decision be given prospective application.

 Generally, decisions are retroactive. However prospective application may be appropriate when a decision establishes a new rule of law. *State v. Afanador,* 151 *N.J.* 41, 57, 697 *A.*2d 529 (1997). In order for a decision to be deemed a new rule of law for retroactivity purposes, "there must be a 'sudden and generally unanticipated repudiation of a long-standing practice.' " *Id.* at 58, 697 *A.*2d 529 (quoting *State v. Cupe,* 289 *N.J.Super.* 1, 12, 672 *A.*2d 1233 (App.Div.), *certif. denied,* 144 *N.J.* 589, 677 *A.*2d 761 (1996)). That is, "there must be some 'appreciable past from which the rule departs.' " *Id.* at 58, 697 *A.*2d 529 (quoting *State v. Burgess,* 298 *N.J.Super.* 254, 268, 689 *A.*2d 730 (App.Div.1997), *aff'd by,* 154 *N.J.* 181, 712 *A.*2d 631 (1998)). "Together with those considerations, we must weigh whether retroactivity furthers the underlying purpose of the rule and whether retroactive application could produce substantial inequitable results." *Montells v. Haynes,* 133 *N.J.* 282, 295, 627 *A.*2d 654 (1993).

Here, there appears to have been a long-term interpretation of the law to the effect that an ordinance was not required to create new police positions. That is true not only in Fort Lee, but also in other municipalities and even on the part of the Attorney General who promulgated a model police ordinance authorizing the creation of positions by resolution. *Model Rules and Regulations,* 2d ed. (Nov.1992) (visited March 22, 2001) <http://www.state.nj.us/lps/dcj/agguide.htm>. *See also Hamill v. City of Clifton,* 10 *N.J. Misc.* 843, 845, 160 *A.* 882 (1932) (holding that ordinance providing for appointment of city fireman by nomination of fire committee and confirmation by council was not invalid as ordinance did "not leave the number of fireman to be appointed to the caprice of the committee").

Indeed, there has been reliance on the notion that police positions can be established by resolution such that if we were to a apply the rule in this case retroactively, our interpretation would have the effect of undermining many police appointments throughout the state. No purpose is served by such an approach.

Thus from today forward no appointment may be made to any police department position not created in accordance with *N.J.S.A.* 40A:14–118. However, those appointments made prior to this date to positions created by resolution will continue to be valid. In other words, O'Sullivan is not precluded from holding the position of Chief because the gateway position of Deputy Chief was created by resolution.

Because a number of other challenges to O'Sullivan's entitlement to the position of Deputy Chief were not addressed by the Appellate Division (for example, whether his appointment violated the Open Public Meetings Act, *N.J.S.A.* 10:4–6 to –21), we remand the case to that court to dispose of those matters. If the court rules that there is an impediment to O'Sullivan's appointment as Deputy Chief, other than that the position was created by resolution, he need not be reinstated. Contrariwise, if the Appellate Division rejects plaintiff's remaining contentions, O'Sullivan should be reinstated to the position of Chief with respect to which no independent objections have been advanced.

The judgment of the Appellate Division is affirmed in part and reversed in part, and the cause remanded.

LaVECCHIA, J., concurring and dissenting.

The majority rightfully recognizes that there has been "long-term doubt about the necessity of an ordinance to create new police positions" and declines to disrupt appointments to police department positions, like O'Sullivan's appointment to deputy chief, heretofore made by a governing body's resolution instead. *Ante* at 42, 768 *A.*2d at 772. I agree with the majority that O'Sullivan is not precluded from occupying the position of chief of

police. However, I disagree with the majority's reading of *N.J.S.A.* 40A:14–118.

*N.J.S.A.* 40A:14–118 authorizes the creation of municipal police departments. It was last amended in 1981 and provides in pertinent part:

> The governing body of any municipality, by ordinance, may create and establish, as an executive and enforcement function of municipal government, a police force, whether as a department or as a division, bureau or other agency thereof, and provide for the maintenance, regulation and control thereof. Any such ordinance shall, in a manner consistent with the form of government adopted by the municipality and with general law, provide for a line of authority relating to the police function and for the adoption and promulgation by the appropriate authority of rules and regulations for the government of the force and for the discipline of its members. The ordinance may provide for the appointment of a chief of police and such members, officers and personnel as shall be deemed necessary, the determination of their terms of office, the fixing of their compensation and the prescription of their powers, functions and duties, all as the governing body shall deem necessary for the effective government of the force.
>
> [<em>N.J.S.A.</em> 40A:14–118.]

The statute is ambiguous. Two alternative constructions are possible. One construction, embraced by the majority, would require that all positions in a police department be created by ordinance. Another construction, advanced by the Attorney General, acting through the Police Bureau of the Division of Criminal Justice, would allow for creation and changes in positions within police departments to be accomplished by resolution once the police department is established initially by ordinance. Resolutions are, of course, a more flexible tool than ordinances, which require two readings, publication, and hearing before passage. *N.J.S.A.* 40:49–1. Resolutions, by contrast, may be introduced and passed at the same meeting. *Ibid.*

Because the Attorney General is charged with overseeing the coordination and guidance of municipal police departments, *N.J.S.A.* 51:17B 98, –101, –112, or –113, because his interpretation of *N.J.S.A.* 40A:14–118 is longstanding, and because, as the majority recognizes, positions in many police departments have been created by resolution over the years, I would defer to the Attorney General's construction of the statute and to his policy choice

that the resultant flexibility accorded municipal government is desirable. I therefore respectfully dissent.

## I.

*N.J.S.A.* 40A:14–118 permits a local governing body to create a municipal police department:

The governing body of any municipality, by ordinance, *may* create and establish, as an executive and enforcement function of municipal government, a police force, whether as a department or as a division, bureau or other agency thereof, and provide for the maintenance, regulation and control thereof.

[*N.J.S.A.* 40A:14–118 (emphasis added).]

If such a decision is made, the statute prescribes how the police department is to be created. That must be accomplished by way of an ordinance. The statute further prescribes what the ordinance must minimally contain by the inclusion of the word "shall":

Any such ordinance *shall,* in a manner consistent with the form of government adopted by the municipality and with general law, provide for a line of authority relating to the police function and for the adoption and promulgation by the appropriate authority of rules and regulations for the government of the force and for the discipline of its members.

[*Ibid.* (emphasis added).]

In 1981 the statute was amended extensively, and prominent in the changes was the above language requiring that the municipal governing body provide by ordinance for an established "line of authority" between the police department and the governing body. The amendments, it appears, were intended to properly structure the relationship between the police department and the governing body. As the legislative history elucidates, there had been instances of improper influence between local governing bodies, or their individual members, and the local police force:

The Assembly Committee Substitute would clarify the responsibility for the conduct of municipal police forces by providing for a line of authority with respect to the exercise of the police function in municipalities and by providing for the duties and responsibilities of chiefs of police in those instances where that position is established by the municipal governing body.

The bill would provide statutory direction that the police force is an executive and enforcement function of municipal government. Each municipality having a police force would be required to establish a line of authority relating to the police function and to designate an "appropriate authority" which may be the mayor,

manager or governing body, depending on the form of municipal government. The "appropriate authority" shall adopt rules and regulations for the government of the police force which the chief of police shall be subject to. The line of authority would be required to be consistent with the degree of separation of executive and administrative powers from legislative powers inherent in the municipal form of government. The municipal governing body and any individual thereof would be required to act as a body as [sic] through the "appropriate authority" in all matters relating to the police function.

[Assembly Judiciary, Law, Public Safety and Defense Committee, *Statement to Assembly Committee Substitute for Senate No. 1243*, June 22, 1981, at 1 (enacted as *L.* 1981, *c.* 266).]

The Assembly Committee's Statement further explained what the Committee perceived to be the "appropriate authority" to exercise regulatory power over the police function in the various forms of municipal government extant in the State. A Senate County and Municipal Government Committee Statement to Senate No. 1243 expressed an analogous concern that a line of authority was needed in municipalities to clarify the relationship between the police function and the municipal governing body. Thus, the 1981 amendments to the statute legislated a form of authority through which the governing body was to interact with the police department.

The legislative changes in 1981 touched other areas as well. The amended language responded, approvingly, to the decision in *Jansco v. Waldron,* 70 *N.J.* 320, 360 *A.*2d 321 (1976), that had applied a practical interpretation to the wording of the predecessor version of *N.J.S.A.* 40A:14–118. That predecessor statute read as follows:

The governing body of any municipality, by ordinance, may create and establish a police department and force and provide for the maintenance, regulation and control thereof, and except as otherwise provided by law, appoint such members, officers and personnel as shall be deemed necessary, determine their terms of office, fix their compensation and prescribe their powers, functions and duties and adopt and promulgate rules and regulations for the government of the department and force and for the discipline of its members.

[*L.* 1971, *c.* 197.]

Despite the seemingly directory language requiring a municipal governing body, in creating a police force, to pass an ordinance that promulgated rules and regulations governing the operation of

that department, the Court in *Jansco* upheld Trenton's ordinance that had delegated that responsibility to the Director of Public Safety subject to the mayor's approval. *Jansco, supra,* 70 *N.J.* at 326–27, 360 *A.*2d 321. The Court was sympathetic to the local governing body's argument that it was preferable for it to delegate that important responsibility in order for the police force to operate in a modern and efficient manner. *Id.* at 327, 360 *A.*2d 321. The delegation was to an official more knowledgeable and able to act responsively to changing needs in police force management. *Ibid.*

In *Jansco,* the Court chose a reasonable construction of a statute, whose objective, the Court rightly discerned, is to enable local governing bodies and their police forces to operate sensibly with some flexibility. The Court could have, but chose not to, read the opening reference in the then version of the statute to require the governing body itself, acting only through an ordinance, to take all actions listed in *N.J.S.A.* 40A:14–118, including the act of promulgating rules and regulations for the police force.

That approach by the Court was ratified by the Legislature in the 1981 amendments. Although the statute previously had required the local governing body, by ordinance, "to appoint" and "to promulgate rules and regulations" for the operation of the police department it had created, the amendments to the statute provided differently. Now, a local governing body's ordinance creating a police force "shall provide for the adoption and promulgation" of rules and regulations for that department, and *"may provide for the appointment* of a chief of police and such members, officers and personnel as shall be deemed necessary...." By eliminating the directory language in respect of how the governing body was to act, and by changing "adopt and promulgate" to "provide for the promulgation of," the legislative amendments brought the statute in line with the flexible and practical approach taken by the Court in *Jansco.* The legislative amendments encompassed similar language for the appointment power as well, changing "appoint" to "provide for the appointment of."

That language bespeaks flexibility, including the flexibility to provide that future appointments be by resolution.

The Appellate Division decision principally relies on decisional law that involved challenges to local governing body appointments, but all cases discussed precede the 1986 amendments to *N.J.S.A.* 40A:14–118, and none involve statutory language akin to that amended statute. Those decisions are not controlling here in my view. I perceive a difference between a statute that authorizes a local governing body actually to appoint such members, officers, and personnel as are deemed necessary for a police force, and a statute that authorizes a local governing body to "provide for the appointment" of such members, officers, and personnel. The verb "appoint," denoting direct action, is not the equivalent of "providing for" the "appointment." "Appointment" is defined as the "act of appointing." *Webster's Third New International Dictionary* 105 (1981). The statute thus would permit a local governing body to pass an ordinance creating a police force and authorizing the method for the act of appointing members, officers, and personnel. That is precisely the view taken by the Attorney General's Division of Criminal Justice in the longstanding advice it has rendered to municipalities across the state. The Attorney General's construction of the statute is a plausible reading. The Attorney General's interpretation allows for flexibility for local government. The potential for harm to the public apparently feared by the majority if a local governing body were permitted to establish police department positions—officer, member, and civilian positions alike—by resolution instead of by ordinance is not well grounded. Public notice of local government police appointments and scrutiny of local government expenditures on its police force would still occur through the annual appropriation process. *See N.J.S.A.* 40A:4–8 (requiring all appointments to be set forth annually in municipal budget).

Normally we defer to the interpretation ascribed to a statute by an administrative agency charged with responsibility for assisting in the implementation of the legislative design. *Cedar Cove, Inc.*

*v. Stanzione,* 122 *N.J.* 202, 212, 584 *A.*2d 784 (1991) (noting that interpretation of statute is assisted by understanding of agency charged with responsibility for enforcement, and stating that "[t]he meaning ascribed to legislation by the administrative agency responsible for its implementation, including the agency's contemporaneous construction, long usage, and practical interpretation, is persuasive evidence of the Legislature's understanding of its enactment"); *Malone v. Fender,* 80 *N.J.* 129, 137, 402 *A.*2d 240 (1979) (stating that in construing doubtful statute, "an agency's construction of a statute over a period of years without legislative interference will under appropriate circumstances be granted great weight. . . ."). Here, the Attorney General, acting through the Police Bureau within the Division of Criminal Justice, is charged with general supervision of law enforcement in the State and, pursuant to that authority, provides regular guidance to police departments. The Police Bureau has been providing guidance since 1987, which included the development of a model ordinance allowing for subsequent appointments by resolution, recommended for use by municipal governing bodies when creating a police department for their communities. *Model Rules and Regulations,* 2d ed. (Nov.1992) (visited March 10, 2001) <http://www.state.nj.us/lps/dcj/agguide.htm> A municipal governing body should not have to act by its most formal legislative process, passage of an ordinance after publication and two readings, each time a position on a police force is to be established. It could choose in its initial ordinance creating the police force to set forth a different mechanism by which it would take such action.

Furthermore, to the extent the decision below interprets the statutory reference to "line of authority" to mean that the municipal ordinance must establish a detailed organizational chart, it is in error. The legislative history plainly discloses that the "line of authority" language referred to the interaction between the police department and local government, not the police department's organizational chart. The statute, after all, was designed to end the problem of interference with the police function by elected officials. The 1981 amendments required the creation of a line of

authority between the police function and the governing body by expressly providing for the duties and responsibilities of the chief of police when that position is established by the local governing body, and an appropriate authority to which the police chief, and the police function in its entirety, are subordinate. *Grasso v. Borough Council of Borough of Glassboro*, 205 *N.J.Super.* 18, 29, 500 *A.*2d 10 (App.Div.1985), *certif. denied*, 105 *N.J.* 453, 522 *A.*2d 998 (1987).

Thus, the decision below that the majority affirms misconstrued the reference to "line of authority" and, I respectfully suggest, took too rigid an approach on how a municipality must act when creating police department positions. *See Hamill v. City of Clifton*, 10 *N.J. Misc.* 843, 845, 160 *A.* 882 (1932) (approving validity of ordinance that established method of appointment of employees to fire departments, permitting fire committees to nominate persons and city council to confirm thereafter by resolution). Accordingly, because I consider the statute to be susceptible to various constructions, I would follow the approach that affords more flexibility to the local governing body. In my view, the model resolution developed by the Attorney General for use by municipalities in creating police departments, and used by municipalities (albeit not Fort Lee) across the State for years, complies with *N.J.S.A.* 40A:14–118.

*For affirmance in part/reversal in part and remandment*— Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—6.

*Concurring in part and dissenting in part*—Justice LaVECCHIA—1.